[No. 8284.]

HURT ET AL. v. SCHNEIDER ET AL.

1. LANDLORD AND TENANT—*Duties and Disabilities of Tenant.* The relation implies fealty on the part of the tenant towards his landlord. (106.)

The adjudged cases as to the duties and disabilities of the tenant examined. (106-110.)

2. —— *Tenant Acquiring Adverse Title.* The tenant covenanted to pay the taxes for certain years. While still occupying under the lease, he acquired a tax purchase certificate for a year anterior to those mentioned in

his covenant, and took a treasurer's deed thereon. *Held* that the heirs of the landlord were entitled to redeem, and have the tax deed cancelled. (105, 110.)

*Error to the Court of Appeals.*

*En Banc.*

Messrs. GOUDY, TWITCHELL & BURKHARDT, for plaintiffs in error.

Mr. SAMUEL H. KINSLEY and Mr. JOHN A. CARRUTHERS, for defendants in error.

Opinion by Mr. Justice TELLER.

The defendants in error are the heirs at law of John Schneider who brought suit to cancel a tax-deed under which the defendants claim title to a tract of land in Saguache County.

The trial court found for the defendants and dismissed the action. The Court of Appeals reversed the judgment, (25 Colo. App. 355), and the cause is now here for a review of the judgment of reversal.

There is no dispute as to the facts, and the only question presented is one of law.

On January 16, 1899, said John Schneider by an instrument in writing leased to said Hurt the land in controversy, for a term of four years from said date, the lessee covenanting to pay all taxes assessed against the land for the years 1899, 1900, 1902 and 1903, in addition to a small cash rent.

In August 1900, while Hurt was in possession of the land under the lease, he purchased from the County Clerk of said county an assignment of a tax sale certificate of said land, which had been sold to the county for the taxes of 1898. In November 1902, Hurt, still being in possession under the lease, received a tax-deed on the certificate so assigned to him. Thereafter he conveyed the land by warranty deed to defendant Green.

The Court of Appeals, in reversing the judgment and as a reason therefor, held that, under former decisions of this court, the statute required the assignee of a tax certificate to pay subsequent taxes as a condition of the issue to him of a tax-deed; and that, inasmuch as Hurt was required by the lease to pay the taxes for his lessor, he could not be heard to claim that he paid them in his own interest, as assignee of the certificate. Hence, it was held, he had not performed the condition which entitled him to the tax-deed.

In the view which we take of the case it is not necessary to determine as to the correctness of this interpretation of the statute. The judgment of the Court of Appeals is approved on other grounds which are fully presented by the assignment of errors.

That a tax-title cannot be acquired by one who is under obligation to pay the tax is conceded, but, it is said in this case the tax-deed is based upon a sale for the taxes of 1898, which Hurt was not required by the lease to pay. Hence, it is asserted, the tax-deed is good.

It is true that in several states it has been held that a tenant may purchase at a sale for taxes which he is not bound to pay, and set up against his landlord a title thus originating; but we are of the opinion that the cases holding to the contrary are supported by the better reasons.

The relation of landlord and tenant is not one in which either party may regard only his own interest.

The lessee is let into possession of the demised premises and holds them for the benefit of both the lessor and himself. During the term of the lease their interests in regard to the premises are in many respects identical. The relation implies a fealty on the part of the tenant to his landlord from which spring well known legal duties not prescribed in the lease. One of these duties, existing at common law, is that when sued in ejectment he shall notify the landlord of such suit. If he neglects it, he is guilty of practical bad

faith; although he may attorn to a purchaser of his land-
lord's title, yet 'all the authorities agree that he cannot
attorn to a stranger to that title, or purchase and set up
a stranger's title, although it may be the paramount title.
Under whatever title he may claim, he cannot set it up
against his landlord until he has restored the possession he
received from him. Lowe v. Emerson, 48 Ill. 160; Wood v.
Turner, 26 Tenn. 516.

He may claim under a title derived from his landlord
either by grant or by operation of law, but not under a title
hostile to that of his landlord. Sharp v. Kelley, 5 Denio,
431. It is a breach of faith for a tenant to allow the leased
property to be sold on execution without notifying his land-
lord.

The relation of landlord and tenant is so far confiden-
tial as to render it inequitable for a tenant, who is also a lien
creditor, to issue execution and buy in the property at a
sheriff's sale without notice to the landlord. Mathews' Ap-
peal, 104 Pa. St. 444.

If a tenant, while in possession under a lease, purchases
the property at a judicial sale, without notice to his land-
lord, he will be presumed to have purchased it to protect
his possession, and the landlord may redeem. Lausman v.
Drahos, 10 Neb. 172, 4 N. W. 956, 35 Am. Rep. 468.

In Thrall v. Omaha Hotel, 5 Neb. 295, 25 Am. Rep. 488,
it is said:

"The parties must act in good faith towards each other;
and, therefore, we think the policy of the law will not per-
mit a tenant to avail himself of the advantage, given to him
by his possession, to purchase incumbrances upon the prem-
ises for the purpose of speculation. * * * It seems to us
that such conduct would be a breach of good faith, and the
law will not permit it. Certainly, the fealty incident to the
leasehold tenure, as well as the privity between the parties,
will not allow such advantage to be taken by the tenant in

possession. But if while in possession under the lease, the tenant shall purchase an incumbrance on the leased premises, the presumption is that he did it for the only purpose permitted by law: that is, to protect his possession."

A tenant acquiring a right of way for the benefit of the leased premises, or who encloses or otherwise encroaches on adjacent property, is, at the end of the term, presumed to have done so for the benefit of his landlord. *Dempsey v. Kip,* 61 N. Y. 462.

And this is true even if the tenant had by such act, obtained title by prescription. I Wash. on Real Property, 556, 4th Ed.

Judge Story—Equity Juris, 218-323,—includes landlords and tenants in the class of persons between whom the relation is of a fiduciary nature, so as to require the utmost degree of good faith in all transactions between them.

The principles thus announced have been held by eminent courts and text writers to apply in cases like the one under review. In a note on page 690 of Vol. 15, Am. Dec's. Judge Freeman says:

"The relation of landlord and tenant is of such a nature as to disqualify either from acquiring title under a tax deed. Although it is the duty of the landlord to pay the taxes assessed in the absence of any agreement to the contrary between the parties: Taylor on Land. and Ten., Sec. 341; yet the tenant will not be permitted to take advantage of the omission of his landlord to pay the taxes, to terminate the relation between them and obtain title to the land. *Curtis v. Smith,* 42 Iowa, 665. The remedy of the tenant is rather to discharge the assessment himself and deduct the amount from the rent."

Parties in possession of land either as licensees, or as tenants without obligation to pay rent, cannot acquire title from one claiming under a tax-deed, though issued before the beginning of their tenancy or occupancy. *Keokuk & Des Moines Ry. Co. v. Lindley,* 48 Iowa, 11.

In Black on Tax Titles, Sec. 288, in discussing the right of a tenant to acquire a title by a tax-deed, the author says:

"In some states it is held that no obligation necessarily grows out of the relation of landlord and tenant compelling the latter to pay the taxes, and if no such obligation is created by statute, the tenant in possession may lawfully buy the premises at a tax-sale; and the sale, if valid, not only extinguishes the title of the landlord, but also cuts off the lease. But it may be pertinently asked—is not the tenant interested in the landlord's title to the extent of the preservation of his own lease? Is there not such a community of interest in the title as would render it inequitable for either to oust the other through the instrumentality of a tax-title? And if the tenant bids in the property at a tax-sale, should it not be presumed that he has done so for protection only, and that the utmost he can claim is reimbursement for his expense?

And indeed there are cases holding that the relation of landlord and tenant is of such a nature as to disqualify either from acquiring title under a tax-deed; that although it is the duty of the landlord to pay the taxes assessed, in the absence of any agreement to the contrary between the parties, yet the tenant will not be permitted to take advantage of the omission of his landlord to pay the taxes, to terminate the relation between them and obtain title to the land."

In *Smith v. Spect,* 58 N. J. Eq. 47, 42 Atl. 599, the court says:

"But, independent of his liability by the statute to pay the taxes, the mere fact that he was in possession as tenant of Masten or of anybody else, or in possession without having attorned to any person, but all the time receiving rents and profits, prevented him from purchasing the premises at a tax-sale and holding them against the real owner. * * * The general principle is that one who is under either a

moral or legal obligation to pay the taxes, or is in anywise interested in the premises, cannot buy the tax-title and thereby cut off the title of another party interested, however the interest of either may arise.

The subject is treated by Mr. Black (H. C.) in his book on Tax Titles (2nd ed.) §§ 288, 289; and, while there is some contrariety of decision on the subject, I think the clear weight of authority and the better reasoning are in favor of the rule as stated."

To the same effect are the following cases: *Bailey v. Campbell*, 82 Ala. 342, 2 So. 646; *Jackson v. King*, 82 Ala. 432, 3 So. 232; *Morris v. Apperson*, (Ky.), 13 S. W. 441; *Gaskins v. Blake*, 27 Miss. 675; *Walker v. Harrison*, 75 Miss. 665, 23 So. 392; *Petty v. Mays*, 19 Fla. 652; *Horner v. Dellinger*, 18 Fed. 495; and *Williams v. Towl*, 65 Mich. 204, 31 N. W. 835. In the latter case an attempt of a tenant to obtain title through a tax sale is characterized as a fraud on the landlord.

In *Arnold v. Woodard*, 4 Colo. 249, the court, in discussing the right of a tenant to dispute his landlord's title, says:

"The spirit of the general rule is, that the tenant shall not avail himself of any act of his own in hostility to the landlord's title as a ground of refusal to surrender his possession under the contract of tenancy."

This places the rule on solid grounds in accord with the principles announced in the foregoing citations.

We are not to be understood, then, as denying the right of a tenant under proper circumstances to dispute the title of his landlord. The rule just quoted will afford a guide as to when the estoppel will be enforced. For the purposes of this case it is sufficient to say that the relation between the ancestor of defendants in error and plaintiff in error Hurt was such that it was inequitable for the latter to take title under the tax-sale as he did. The defendants in error

are entitled to redeem from the plaintiffs in error from the
the tax-sale, and have the tax-deed cancelled.    The judg-
ment of the Court of Appeals is affirmed, and the cause.
remanded to the District Court for further proceedings in.
harmony herewith.

*Judgment affirmed.*