No. 18,375.

C. George Swallow, et al. *v.* The Calcium
Company, et al.
(348 P. [2d] 715)

Decided January 18, 1960.

Mr. WILLIAM L. LLOYD, Mr. KARL W. FARR, JR., for plaintiffs in error.

Mr. WYNN M. BENNETT, JR., Mr. WILLIAM S. RUSH, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

PLAINTIFFS in error, C. George Swallow and Mineral Aggregates Corporation, seek reversal of the judgment of the district court of Fremont County in favor of the Calcium Company, a corporation, and C. M. Somerville, Trustee. Calcium and Somerville were plaintiffs in an action against Swallow, Minerals Processing, Inc., and others. The parties will be referred to as they appeared in the trial court or the Calcium Company will be referred to as Calcium and Minerals Processing, Inc., will be referred to as Minerals.

F. C. Harvey, who appears herein as a defendant, was during the time in question, President of Calcium. He was nevertheless here named as a defendant (undoubtedly because he was acting contrary to Calcium's interests). A money judgment was entered against him and plaintiffs' titles were quieted as against him. Frank W. Hirth and Paul E. Austgen were directors and officers of Calcium. C. George Swallow was an officer of the defendant Minerals. The controversy centers around a

Lease and Option to purchase whereby the Calcium Company leased certain mining claims to Minerals with an option to purchase. The lease included a sizeable number of mining claims, but the particular dispute concerns only those which relate to a certain calcide deposit in Fremont County, Colorado. These were specified in the lease as the Black Crow No. 1, the Black Eagle No. 2 and the George Washington Lode claims.

The initial transaction of a long series occurred in November 1952, at which time, as the trial court found, F. C. Harvey orally agreed for value to convey to Calcium the Black Crow No. 1 and the Black Eagle No. 2, together with the George Washington Lode claims and the Black Crow No. 1 and George Washington Placer claims. Although all of the parties proceeded on the assumption that Harvey had completed these conveyances and although deeds were in fact drafted and submitted, it would appear that Harvey did not in fact execute deeds until September 1955, at which time the lease to Minerals was in force and effect. At this latter time Harvey executed two sets of deeds in one of which C. George Swallow was named as grantee and in the other Calcium was named as grantee. Both sets were delivered to Swallow, who was then acting on behalf of the lessee, Minerals.

The original lease between Calcium and Minerals was executed February 9, 1955. This lengthy document was superseded and amended by a lease executed April 6, 1955, and ratified by the directors of Calcium (including Harvey) on April 23, 1955. Under this latter Minerals took possession of the property and continued in possession to the time of the trial.

Under the terms of the April 6 or Amended Lease the lessee was required to pay a monthly rental of $1,000.00, 5 months of which had to be paid in advance upon signing and 4 months of which was to be paid in advance upon ratification. Three months' advance rentals were

due on September 1, 1955. Contained in the amended lease was the following covenant:

"2.1   Lessor represents that it is the owner of the property covered by this lease agreement, and that it has a good and sufficient right to lease the same, and covenants and agrees that it will defend the right of the lessee to peaceable enjoyment and use of said premises against any and all persons whomsoever adversely claiming the same or any right therein. Provided further, said lessor agrees to furnish to the lessee at its expense, satisfactory evidence of title to all properties covered by this lease agreement within sixty (60) days from and after the execution of this agreement."

On July 20, 1955, as a result of Minerals' objections to Calcium's titles, a Supplemental Agreement was entered into.   This Supplemental Agreement provided that in view of the expenditure by Minerals of $3860.00 for surveying and title checking and in view of its contentions that the title was defective, Minerals for a consideration of $3860.00 would transfer certain claims covered by the lease which were then held by Minerals' President, C. George Swallow.   These were the Black Crow No. 1, the Black Eagle No. 2 Placer claims (which were not here claimed by the plaintiffs).   The Supplemental Agreement also provided that Minerals would make available to Calcium all of its survey and plane table data and further provided that Minerals would cause the restaking, surveying and recording of the Black Crow No. 1 Lode claim, and Black Eagle No. 2 Lode claim and the George Washington Lode and Placer claims for a consideration of $1350.00, or in the alternative that Calcium would itself complete the same work and would "furnish to the said lessee within a reasonable time evidence of good and merchantable title * * *."

The Supplemental Agreement further provided:

"The lessor is specifically hereby permitted, if it elects, to complete said claims at its own expense, to use any

information developed by the said lessee in perfecting titles heretofore."

A further provision of the Supplemental Agreement was that the effective date of the amended lease was 45 days later than originally provided. The dates for the payment of additional rent became June 15, 1955, and October 15, 1955. Also contained in the Supplemental Agreement was a provision that:

"Neither party shall be considered in default providing that the terms of this supplementary agreement be complied with, together with the terms of the amended lease agreement and option to purchase agreement as hereby supplemented."

In accordance with the terms of the Supplemental Agreement, Swallow conveyed to Calcium the Black Crow No. 1 and Black Eagle No. 2 Placer claims which had been located during survey work performed prior to July 20, 1955. Calcium paid Minerals $3860.00. Frank W. Hirth, President of Calcium Company, proceeded to relocate the claims. Six locations were also filed by Swallow. These included the Mineralag "A" Lode and Placer claims located August 25, 1955, filed August 26, 1955; Mineralag "B" Lode and Placer claims located August 28, 1955, filed September 7, 1955; the George Washington Lode and Placer claims located on August 25, 1955, filed August 26, 1955. On September 2, 1955, Hirth, acting on behalf of Calcium, located the Black Eagle No. 2 Lode claim and the George Washington No. 101 Lode claim, the Black Crow No. 101 Lode claim, the George Washington No. 102 Lode claim and the George Washington No. 1 Placer claim. These latter were conveyed by Hirth to Calcium by deed dated October 24, 1955, but not recorded. All of the above locations were in the identical area with the original Harvey locations and involved the same deposits.

As above indicated, the defendant Swallow, having learned that Harvey had not actually conveyed his claims to Calcium, obtained two sets of deeds dated on

or about September 22, 1955, from the latter purporting to convey his interest in the property. In the first set, Calcium was named as grantee and delivery was made to Swallow with instructions to him to deliver to Calcium if and when the latter complied with certain conditions contained in a letter dated September 23, 1955.

On October 25, 1955, Calcium's attorney notified Swallow in writing that Minerals was in default for failure to pay the rental in the amount of $3,000.00 which was due on October 15, 1955. Minerals was given 60 days in which to comply with this demand or in the alternative to surrender and forfeit the lease. On February 6, 1956, Calcium notified Minerals that it considered the lease cancelled and terminated. In response thereto, on February 24, 1956, Minerals replied denying a default and demanding compliance by Calcium with Sec. 2.1 of the Supplemental Agreement (the covenant to furnish satisfactory evidence of title). Prior thereto, Calcium had, on November 21, 1955, instituted a suit seeking (1) to quiet title to the properties in question; (2) to recover damages from F. C. Harvey amounting to $3,903.44; (3) demanding damages for $100,000.00 based on the allegation that Harvey, Swallow and Minerals had conspired to deprive Calcium of the properties in question; and (4) to recover damages from Swallow and Minerals in the amount of $3860.00 (the sum paid in connection with the Supplemental contract), which was alleged to have been obtained by fraud.

Defendants denied the allegations of the complaint and by counterclaims sought a quiet title decree in themselves and damages in the amount of $659,000.00 for alleged fraud and breach of contract. Several individuals and groups were named as third party defendants. They, together with the plaintiffs, filed replies and answers to the counterclaims, setting up affirmative defenses alleging:

1. That defendants Swallow and Minerals were estopped to deny plaintiffs' title.

2. That the defendants had waived any violations which had occurred.

3. That any titles held by Swallow and Minerals were held in trust for plaintiffs.

4. That titles of the defendants were taken with notice of defendants' title and as affirmative defenses to the claim for damages that the defendants had violated their covenant to pay rental and that the lease had been properly cancelled.

Trial was had to the court and a judgment and decree was entered which generally favored the plaintiffs. Title was quieted in the plaintiffs. It was held that the amended lease was properly terminated for the reason that the defendants had violated its terms and the terms of the Supplemental Agreement.

A specific finding was that Harvey had orally agreed to convey the properties in question to Calcium. A further finding was that the defendants had obtained the sum of $3860.00 by fraud perpetrated in connection with the Supplemental Agreement of July 1955 and that they had violated the terms of this Agreement. It was further found that the titles obtained by the defendants were held in trust for the plaintiffs; that the defendants had failed to pay the rent, had failed to account for products mined and had been properly notified of cancellation; and that the plaintiff was the owner and was entitled to possession of the properties in question.

Judgment was entered against Harvey in the amount of $3,903.44. It was ordered that the Lease and Option and Supplemental Agreement be cancelled; it was decreed that the plaintiffs have possession of the properties in question and that judgment be entered against Swallow and Minerals for $3860.00 and that title be quieted in the plaintiffs.

The points urged by defendants in support of their demand for reversal are as follows:

I. The plaintiffs failed to perform covenant 2.1 of Paragraph II of the amended lease agreement, dated

April 6, 1955, thereby breaching the agreement between plaintiffs and defendants, thereby depriving plaintiffs of any status in court to pray the relief asked for, and rendering it liable to defendants for the damages prayed for.

II. That the attempted defaulting of defendants by plaintiffs on October 25, 1955, was illegal and void, for the reason that no rental was due on such date, and none was due on the purported date of cancellation of the lease by plaintiffs.

III. The doctrine of estoppel of a tenant to deny his landlord's title promulgated by plaintiffs and adopted by the court was inapplicable to the case at bar.

IV. The court erred in finding plaintiffs to be entitled to judgment against the defendants in the sum of $3,860.00.

V. The findings of fact, conclusions of law and the judgment and decree entered herein are contrary to the evidence and the law.

I.

Defendants' principle contention is that plaintiffs violated the covenant of the Amended Lease under which plaintiffs had agreed to furnish satisfactory evidence of title; that as a consequence of this violation the plaintiffs lacked standing to terminate the lease and to obtain the relief they now seek. Defendants further assert that their acts in taking title in themselves were merely precautionary and for the purpose of protecting their capital investment, and that they offered to correct the title in the Supplemental Agreement of July 20, 1955, but that plaintiffs did not avail themselves of the option which was given whereby defendants for the sum of $1350.00 would have undertaken this responsibility.

The trial court predicated its findings and conclusions that title was in Calcium on the oral agreement between Calcium and Harvey whereby Harvey undertook to convey the claims in dispute. There was additional evidence which supported this finding. F. C. Harvey rati-

fied the amended lease on April 25, 1955. Moreover, Harvey executed an affidavit dated June 12, 1955, obtained from him by Swallow which declared that he had been owner of the Black Eagle, the Black Crow and the George Washington Lode and Placer claims and that these claims "are now the property of the Calcium Company, a corporation and under lease to the Minerals Processing Co., Inc., a corporation." In addition to evidencing the title of Calcium, these circumstances also served to estop Harvey from asserting title adverse to Calcium and inconsistent with the lease to defendants. Testimony at the trial showed that Harvey had expressed in meetings of directors of Calcium his belief that he had already transferred the claims to Calcium. Other evidence in support of Calcium's title included the so-called Hirth filings.

The filings by Swallow plus the deeds obtained by Swallow from Harvey cannot serve as a basis for a conclusion that title to these claims is in the defendants. This follows from the fact that the acquisitions were made during the life of the Amended Lease and Supplemental Agreement of July 20, and any rights acquired were of necessity for the benefit of defendants' lessor. Defendants contend that the rule of tenant estoppel to assert title antagonistic to that of the lessor is not applicable where the lessor or landlord inserts in the case the issue of his title. See 89 A.L.R. 1295, 32 Am. Jur. 117, Sec. 112, *Landlord and Tenant.* Analysis of the facts here presented indicate inapplicability of the exception argued by defendants. The problem here is not entirely a matter of estoppel to assert title but rather it is one of the defendants' disability to acquire adverse title in view of the terms of the Amended Lease and Supplemental Agreement. *Hurt v. Schneider,* 61 Colo. 104, 156 P. 600.

It will be recalled that under the terms of the amended lease plaintiffs had agreed to furnish satisfactory evidence of title within 60 days. The Supple-

mental Agreement was executed after the 60 day period, was entered into with realization on the part of both parties that there were title defects and the general tenor of the Supplemental Agreement was that plaintiffs would proceed to clear the title in conformity to the demands of the defendants.

The *Hurt* case is cited in 172 A.L.R. 1181, 1186. It deals with acquisition by tenant to tax titles adverse to that of landlord. There are numerous supporting decisions from other jurisdictions which do not involve acquisition of tax titles and which are very similar to the present one on their facts. See, for example, *Hines v. Hubble,* 144 Cal. App. (2d) 750 (1956), 301 P. (2d) 592; *Oliver v. Berg,* 154 Ore. 1 (1936), 58 P. (2d) 245; *Storrs v. Belmont Gold Mining & Milling Co.,* 24 Cal. App. (2d) 551 (1938), 76 P. (2d) 197; *Pease v. Johnson,* 106 Cal. App. (2d) 449 (1951), 235 P. (2d) 229; *Brown v. Murphy,* 36 Cal. App. (2d) 171 (1939), 97 P. (2d) 281. The contractual and property relationships between the parties were such as to result in defendants' disability to acquire title on its own.

It should also be noted that defendants at no time renounced or rescinded the terms and conditions of the lease and the Supplemental Agreement. Holding under the lease up to the time of the trial and consequently during the times here relevant, defendants were not in a position to acquire title contrary and adverse to the rights of the plaintiffs. *Fern v. Crandell,* 79 Colo. 403, 246 P. 270.

The only semblance of an argument in justification of defendants' conduct is that which pertains to failure of plaintiffs to comply with the covenants of the amended lease of April 6, whereby plaintiffs agreed to furnish satisfactory evidence of title. Assuming that plaintiffs were in default, this was waived by the Supplemental Agreement of July 20, 1955, which superseded this provision. This latter agreement was entered into for the purpose of settling the dispute which had then

arisen as to the sufficiency of the claim locations. In view of the fact that the defendants voluntarily accepted the substituted provisions, they must be considered to have waived any violation of the amended lease which existed as of July 20, 1955, and thus the default, if any, of the plaintiffs would have to be measured by the terms of the Supplemental Agreement.

Inasmuch as the title correction work called for by the Supplemental Agreement was in response to defendants' demands, the plaintiffs could fairly anticipate an attitude of cooperation from defendants and an implied promise that defendants would not interfere with these efforts and would not seek to obtain title in themselves. These undertakings were supported by a valuable consideration, the sum of $3860.00. As a consequence of these contract obligations, defendants were disabled from acquiring title for themselves. The locations and filings by Swallow, being antagonistic to the contractual and leasehold rights of plaintiffs, cannot be regarded as vesting title in defendants to the prejudice of the plaintiffs. Any rights acquired by Swallow were, under these circumstances, acquired for the benefit of plaintiffs. *Werner v. Norden, et al.,* 87 Colo. 339, 287 Pac. 644; *Hurt v. Schneider,* supra; *Gibson Co. v. Elze,* 88 Colo. 181, 293 Pac. 958; *Wells v. Francis,* 7 Colo. 396, 4 P. 49.

In *Hurt v. Schneider,* supra, the lessee covenanted to pay taxes for the years 1899 and 1903. The county took title to the property because of nonpayment of the 1898 taxes. Hurt purchased a tax title from the county. The Court reversed a dismissal of the complaint which sought a cancellation of the deed under which Hurt claimed. Discussing the duty owed by tenant to landlord, the Court said:

" * * * The relation implies a fealty on the part of the tenant to his landlord from which spring well known legal duties not prescribed in the lease. One of these duties, existing at common law, is that when sued in ejectment he shall notify the landlord of such suit. If

he neglects it, he is guilty of practical bad faith; although he may attorn to a purchaser of his landlord's title, *or purchase and set up a stranger's title,* although it may be the paramount title. Under whatever title he may claim, he cannot set it up against his landlord until he has restored the possession he received from him. * * *" (emphasis supplied.)

In *Colette v. Tidwell,* 112 Colo. 117, 146 P. (2d) 891, the Court said:

· "* * * 1. Mrs. Colette went into possession as Tidwell's tenant; their respective estates then being exactly as they were later adjudicated in Tidwell's suit to recover Exhibit 1. Hence this appears a proper case for the application of the rule that a tenant is estopped to deny his landlord's title, and must restore the possession he obtained thereunder before he can set up an after-acquired interest. *Hurt v. Schneider,* 61 Colo. 104, 156 Pac. 600."

It follows that the trial court's ruling on the title issue was correct and that it also properly resolved the related issues.

II.

Defendants contend that the lease was not terminated in accordance with its terms because there was no rent due on October 15, 1955. They argue further that even if it were due that the breach by plaintiffs of their covenant to furnish evidence of good and merchantable title excused them from paying the rentals.

Since the effective date of the Lease Agreement was established as June 15, 1955, under the Supplemental Agreement, defendants argue that the $9,000.00 paid by them would cover it through March 14, 1956. This argument ignores, however, the following phrase of Section 4 of the Supplemental Agreement:

"* * * and the date of the payment of additional rent as set forth in Section I, Sub-Section 1.1 shall be extended from September 1, 1955, to October 15, 1955. * * *"

Defendants have two further arguments. *First,* that even if they were required to pay the $3,000.00 on October 15, 1955, their failure to do so should not excuse Calcium from performing its obligation and should not be the basis of a forfeiture of Minerals' rights under the lease. *Second,* that it was excused from performing its obligation to pay rent by Calcium's failure to comply with the covenant to furnish a good and merchantable title within a reasonable time, viewing a reasonable time as 60 days which would be approximately September 20 (60 days after July 20).

The first point ignores the provisions of Section 3.3 of the Amended Lease which reads:

"3.3 Should said lesee default in the payment of any of the rents and royalties which they are obligated hereunto to pay, or the performance of any of the covenants which they are obligated hereunder to perform, and should said default remain uncured after notice of said default, setting forth the nature and time thereof, has been given by said lessor to said lessee, and said default remains uncured sixty (60) days after said lessor may declare this agreement terminated and all obligations of the parties hereto due under this agreement which have accrued at the time of said termination shall become due and payable immediately and the balance of the agreement shall be cancelled and released as to both parties."

The second argument is also untenable. Section 3.3 of the Amended Lease, quoted above, does not provide for the remedy which they seek to invoke. In other words, the lessee is not excused from the payment of rent as a result of breach of the covenant to provide merchantable title. A further answer to this contention is that want of evidence of merchantable title is no defense to one who continues in possession of mining claims, working the same, reaping the benefits therefrom, and at the same time denying liability for rent.

### III.

The plaintiffs in their fourth claim sought to

make out a case of fraud in respect to the $3860.00 paid to Swallow under the Supplemental Agreement. The trial court found that fraud had been proved and gave plaintiffs judgment in the amount of $3860.00. We do not believe that this portion of the judgment can be sustained on this record. There is nothing in the pleadings, the evidence, or the findings of the court below to indicate that anything more than a breach of promise is involved here. *Kilpatrick v. Inman,* 46 Colo. 514, 105 Pac. 1080. This is not to say that defendants' conduct viewed as a whole cannot be characterized as fraudulent. The difficulty is that the representations set forth in the complaint were promises to perform acts in the future. There is neither allegation, proof nor finding that the defendants misrepresented their state of mind at the time that the contract was signed in that there was no intent to carry out the undertakings. Thus the legal sufficiency of this theory of fraud is not properly before us. Cf. *Farris v. Strong,* 24 Colo. 107, 48 Pac. 963 and see also *Teare v. Sussman,* 120 Colo. 488, 210 P. (2d) 446. Nor have the plaintiffs sought to sustain the judgment on the basis of defendants' fraudulent conduct. Still another difficulty is that the claim appears to be predicated upon rescission of the Supplemental Agreement. This approach is inconsistent with the plaintiffs' affirmance of the Supplemental Agreement of July 20, 1955.

Since the record before us does not support this part of the judgment, we are constrained to hold that there must be a reversal of the district court's judgment to this extent.

## IV.

Finally, the defendants make the general assertion that the judgment is not supported in either fact or law. In the light of the foregoing discussion, it is plain that there is no merit in this contention. The learned trial judge was confronted with a complex and perhaps purposely complicated set of business dealings, the facts of which were disputed at almost every point. The

findings of the trial court were based on sufficient evidence; we find no error in its resolution of these disputed matters of fact.

The judgment is reversed as to the award of $3860.00 in favor of plaintiffs. In all other respects it is affirmed.

·MR. JUSTICE MOORE and MR. JUSTICE FRANTZ concuring.