No. 18,632.

HENRY H. WHITE v. PAUL W. WIDGER
(358 P. [2d] 592)

Decided December 12, 1960.

Mr. WILLIAM W. DOWNS, for plaintiff in error.

Mr. CHARLES R. CORLETT, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

THE parties are referred to as they appeared in the trial court where plaintiff in error White was plaintiff and Widger was defendant. White instituted a forcible entry and detainer action in which he sought to regain possession of a 160-acre tract of farm property which had been sold to Widger on an installment contract.

Defendant first went into possession of the land in

October of 1940 under a vendor-purchaser installment contract dated September 5, 1940, wherein plaintiff agreed to sell the farm for a total purchase price of $8,000 in installments as follows: $100.00 upon execution of the agreement; $150.00 within 30 days thereafter; $350.00 within 60 days; $740.00 on or before November 1, 1941, and $740.00 on or before November 1, 1942. The proceeds of these latter two installments were, under the contract, to be used to the extent necessary for the payment of delinquent taxes. Thereafter, $740.00 was to be paid annually to and including March 1, 1951. Defendant made the initial payments of $100.00, $150.00 and $350.00. He failed to make all subsequent payments. He did, however, pay a total of $1,928.65 to the County of Rio Grande for taxes during the years 1936 to 1942. In connection with these latter payments he obtained a Tax Certificate from the county and, based thereon, started proceedings in 1943 looking to the issuance of a Tax Deed.

The agreement required defendant to pay all taxes and water assessments for the year 1941 and all subsequent years and also required him to pay the delinquent taxes, including the 1940 taxes in an estimated amount of $1,282.00, such amount to be deducted from the purchase price and presumably to be paid to plaintiff. Interest on delinquent taxes was not to be deducted. A further provision declared time of payment to be of the essence and failure to pay for a period of nine months after due date was to constitute a basis for the seller to terminate the contract and to forfeit all payments theretofore made. The contract looked to a deed of conveyance upon full payment of the purchase price following the furnishing by plaintiff of a merchantable title evidenced by an abstract.

Plaintiff learned that defendant had applied for a Tax Deed soon after the application was made. A meeting was held in December of 1943 at which time plaintiff protested the antagonistic conduct on the part of defend-

ant. On that occasion defendant agreed that he would refrain from obtaining a Tax Deed if plaintiff would clear up the title.

The defects in plaintiff's title were serious and complex as shown by the following summary:

On October 10, 1923, plaintiff conveyed the property by Warranty Deed to one George Cole. On December 20, 1930, Cole and one Wilson mortgaged the property back to plaintiff as executor of the estate of plaintiff's father. In 1933, this mortgage was foreclosed and decree of foreclosure recorded. Thereafter a Sheriff's Deed was issued to plaintiff. He bases title on this deed, the original of which could not be found. No evidence as to plaintiff's authority to act as executor in the estate of his father (other than certain abstract entries) is in the record. The trial court's comments on the state of the title indicate the seriousness of the defects:

"From the evidence, it appeared that sometime after entering into the contract, it developed that a serious question arose as to the title to the premises involved and that several conferences were had between the attorney for the plaintiff, who had removed to the State of California, and the attorney for the defendants, which said conferences resulted in exactly nothing as to a solution of the matter of correcting the defects in the title.

"An abstract of title was introduced in evidence (defendants' Exhibit 2) which discloses that Henry H. White, by warranty deed dated October 10, 1923, conveyed the property herein involved to one George Cole (entry number 28); that thereafter, on December 20, 1930 said George Cole and one Milo E. Wilson executed a mortgage in favor of Henry H. White as executor of the estate of George W. White, deceased, conveying the title to the above described property to secure the payment of said mortgage.

"That the records and files of the District Court of the Twelfth Judicial District, in and for the County of Rio Grande, State of Colorado, disclosed that an action

was filed by the said Henry H. White as executor of the estate of George W. White, deceased, to foreclose the above described mortgage, the same being docket number 3631 in said District Court, and that a decree of foreclosure was entered by the Court on the 20th day of November, 1933.

"The abstract of title discloses (entry number 33) that a certificate of purchase was issued by the Sheriff of Rio Grande County on January 8, 1934, to Henry H. White, executor of the estate of George W. White, deceased. Nowhere in the evidence is it shown where or under what circumstances Henry H. White purported to act as the executor of the estate of George W. White, deceased. That no evidence was introduced that a Sheriff's deed was ever executed or delivered, but there was offered in evidence a purported copy of a sheriff's deed, but which was rejected for the reason that no showing was made as to what had become of any original deed, if one had ever been executed."

The trial judge had further observations with respect to the December 1943 controversy and these remarks are also here pertinent:

"The evidence further disclosed that one or two feeble efforts had been made as between the parties themselves to get the matter adjusted, none of which were successful. There is in evidence copy of a letter purporting to have been written by the plaintiff to the defendants on December 31, 1943, protesting against the application of defendants for a tax deed, and reciting:

" 'This, in my judgment, is a direct violation of your contract of purchase, and is unfavorable to us, as you expressly agreed to pay these taxes. Will you, therefore, please withdraw that application, at once, in order that it may not be the cause of any litigation between us.'

"The application was not withdrawn and as of that date defendant, Paul W. Widger, testified he considered the contract terminated. No further action was taken

by plaintiff until the service of the notice and demand for possession in 1956, some thirteen years after that letter was written."

In the letter referred to by the trial judge, plaintiff advised defendant that he was then leaving for California and that thereafter the matter of enforcing the contract would be in the hands of his sister and that payments were to be made thereafter to her. On December 31, 1943, plaintiff entered into an additional contract with his sister whereby she assumed the vendor's responsibility under the contract in suit and agreed to use the proceeds for the purpose of clearing title, or in the alternative, she was to rescind the entire agreement. In addition, plaintiff conveyed his interest to his sister by Quit Claim Deed which specifically referred to the contract of defendant and was subject thereto.

On May 31, 1946, a Tax Deed was issued to defendant, and this was recorded on June 3, 1946. Defendant continued in possession and in 1956 made improvements on the property, including a well, two silage pits, and some leveling. He stated that he refrained from making improvements until this time so that his title would be established by adverse possession.

Plaintiff's sister conveyed the property back to plaintiff on November 4, 1955. The only other dealings between the parties occurred in 1953 when they met in California and at that time plaintiff was still insistent on receiving payment for the 1940 contract. Defendant said that he would pay off this contract if he received a merchantable title to the premises, but he did not offer to make payments.

The present action was commenced on February 10, 1956, at which time plaintiff served a written demand on defendant for possession. Pursuant thereto, on March 24, 1956, plaintiff filed a complaint demanding the eviction of the defendant under C.R.S. '53, 58-1-4 (9). Following trial to the court, judgment was entered in favor of defendant. Findings of fact were entered on all perti-

nent issues and the important findings are quoted above. The trial court also entered conclusions of law in the course of which it ruled that although a vendee is generally estopped to question the title of his vendor there are certain exceptions to the rule, one of which the court points out arises from C.R.S. '53, 58-1-13, which section permits the defendant to set up title in himself. The court reasoned that although defendant had entered the contract in good faith he soon discovered the impossibility of plaintiff's complying with the stipulation in the contract pertaining to merchantable title. The trial court further pointed out that the defendant had a right to anticipate the impossibility of plaintiff's fulfilling the title stipulation long prior to the payment of all of the installments of the purchase price and to act in his own interest for the purpose of protecting himself. Defendant acted openly and plaintiff had ample opportunity to assert his rights in the contract which he failed to do. The judgment was that the complaint be dismissed.

In urging reversal of the judgment, it is plaintiff's contention that the trial court erred in the following particulars:

*First,* in holding that the plaintiff was guilty of laches; which was neither pleaded nor proven.

*Second,* that the court erred in holding that the plaintiff's title was defective.

*Third,* alleged error pertaining to the trial court's conclusion as to the relative rights and duties of the parties and particularly to the court's conclusion that it would be inequitable to grant to plaintiff the relief demanded in view of his failure to act equitably. It is said that this was an unsupported and unwarranted conclusion.

I. *The question whether laches could be interposed in these circumstances.*

There is little problem in connection with plaintiff's contention that defense of laches was unavailable because of defendant's failure to plead it affirmatively. The original answer contained no such allegation. How-

ever, at the start of the trial, defendant applied for an order amending his answer to include a fourth defense alleging that plaintiff was barred by laches. Plaintiff did not object to this request. In view of the broad sweep of the evidence, it was within the discretion of the court to consider this defense under Rule 15 (a) or 15 (b), R.C.P. Colo.

Was the defense of laches responsive where the action was statutory and would thus be classified as an action at law rather than in equity? We believe that it was.

Equitable defenses are responsive where a vendor seeks to forfeit an installment contract such as the present one. Its equitable character is revealed *first* by the fact that in legal consequence the vendor seeks to rescind the contract. He gives a notice of rescission and then commences an action to make this notice effective. *Secondly,* a vendee who remains in possession for a long period of time and who makes improvements and pays taxes necessarily acquires equitable rights. This is recognized in the statute, C.R.S. '53, 137-11-1, which provides that the vendee is entitled to reimbursement for expenditures of this nature. The cases also recognize the applicability of the doctrine where the vendee has made improvements or otherwise changed his position.

In *Fairview Mining Corp. v. American Mines and Smelting Co.,* 86 Colo. 77, 278 Pac. 800, the Court in an opinion by Mr. Justice Campbell made the following pertinent observations:

"We first observe that plaintiff chose, as its remedy, a legal action to recover possession of the mining claims. It had that right if the facts pleaded in its complaint are true and there is nothing in the course of the dealings between the parties to detract from their force. Plaintiff might have proceeded in equity if the facts are as pleaded by the defendant in its second amended answer, but it was not bound to do so if the facts are only those which the complaint contains. Doubtless desiring to get

possession as quickly as possible, plaintiff selected the speediest remedy available. In doing so, however, it may not in this jurisdiction — where equitable defenses to a legal cause of action are allowed both as matter of defense and as grounds for affirmative equitable relief — cut off the right of the defendant to plead as a defense to plaintiff's legal cause of action, or as grounds for equitable relief, its own equities, which as here, in effect, convert what was instituted as a legal action, under the old practice, into a suit in equity. * * * "

See *Rocky Mountain Gold Mines, Inc. v. Gold, Silver and Tungsten, Inc.,* 104 Colo. 478, 93 P. (2d) 973.

■ The inequity which would result from allowing plaintiff to maintain the forcible entry and detainer action in the present fact setting is clear. Defendant introduced evidence not only that he paid the taxes through the years but also that he expended large sums in improving the land. He paid $6600.00 to develop an irrigation well and spent large sums in leveling and otherwise enhancing the value of the land. Apart from this, we can take judicial notice of the fact that values have increased substantially during the period from 1940 through 1956, when this action was started. These considerations persuade us that the trial court was correct in holding that plaintiff's laches barred this present action in forcible entry and detainer. See *Duncan v. Colo. Investment and Realty Co.,* 116 Colo. 12, 178 P. (2d) 428; *Loveland Camp No. 83, Woodmen of the World v. Woodmen Building and Benevolent Association,* 108 Colo. 297, 116 P. (2d) 195; *Norman v. Boyer,* 111 Colo. 531, 143 P. (2d) 1017.

II. *The question whether sufficiency of the plaintiff's title was properly in issue.*

The trial court's findings disclose that the judgment under review is based essentially on the plaintiff's laches and also on the inadequacy of the title of the plaintiff. Defendant urges that it was error for the trial court to consider evidence bearing on the sufficiency of

his title. He maintains that such a question is foreign to the statutory action in forcible entry and detainer.

The statute pertaining to transfer of such actions to district court, C.R.S. '53, 58-1-9, recognizes that the question of title is often an ingredient of a forcible entry and detainer suit. The cases so hold. See *Cox v. Godec,* 107 Colo. 69, 108 P. (2d) 876; *Sloniger v. Rains,* 120 Colo. 339, 208 P. (2d) 941; *Perkins v. Wagner,* 119 Colo. 218, 202 P. (2d) 150. In the *Perkins* case we said:

"It is further apparent from the allegations of the amended answer, the finding of the court that title could not be tried in the action, and the brief of defendant in error herein, that the court held that they issue as to plaintiff's title raised by the answer could not be considered. Such holding was error. Under the contract plaintiff was required to furnish merchantable title. Whether she did so and, if not, whether under the circumstances defendant could rely on that as a defense or as a ground for recision could not be determined in the absence of the testimony sought to be offered in his behalf."

In the case at bar, paragraph 5 of plaintiff's complaint injected into the case the issue of the sufficiency of his title:

"That plaintiff now is and at all times herein mentioned was owner of the premises described in Exhibit A."

In his answer, defendant denied this allegation and alleged that the plaintiff did not have legal title, color of title or record title and that he was not entitled to possession. In view of the authorities and the state of the record, the title issue was properly considered.

III. *The question whether defendant can assert the title acquired by Tax Deed as against plaintiff.*

The trial court made no finding as to whether defendant had acquired an effective title following his acquisition of a Tax Deed, and pursuant to C.R.S. '53, 137-11-1, 118-7-8, 118-7-11. This issue is not governed

by the principle commented on above that evidence as to plaintiff's title is admissible and is properly considered in a forcible entry and detainer action. Here the defendant is confronted with the doctrine that a vendee in possession of property may not assert a superior title in himself as against his vendor. *Ruth v. Smith,* 29 Colo. 154, 68 Pac. 278. The general rule is set forth in 3 American Law of Property 101, sec. 11.25:

"A purchaser who is obligated by the contract to pay taxes or special assessments cannot, of course, acquire directly or indirectly a tax title which will be of any validity as against his vendor. And on the principle that a purchaser in possession under an executory contract of sale cannot purchase an outstanding adverse title and assert it against his vendor or use it to defeat the vendor's right to the purchase money other than to offset its cost against the amount due, the prohibition is extended to include a tax title based on foreclosure of a tax which is the vendor's obligation to pay or assessed before the purchaser went into possession."

See also *Hurt v. Schneider,* 61 Colo. 104, 156 Pac. 600 (a lessor-lessee case), and *Swallow v. Calcium Co.,* 141 Colo. 399, 348 P. (2d) 715. It is, of course, possible for a purchaser to repudiate the contract and assert his own rights. However, when he does so, the repudiation must be clear and unequivocal and some authorities require that he actually surrender the possession acquired pursuant to the lease or contract before asserting a right antagonistic to that of his vendor.

In the present case, the question of whether defendant repudiated the contract is a disputed one. His least ambiguous act was the acquisition of the tax title which by itself would be insufficient. Notwithstanding this defendant agreed to pay the consideration if plaintiff produced a clear title in the future, and he made such an offer as late as 1953. Another aspect of the evidence at the trial which indicates the conflict was defendant's statement that attorney Howard, who had represented

plaintiff and had also, according to defendant, represented him in 1942, had advised him that the title could not be cleared up and that he should try to get a tax title. This was denied by Mr. Howard. There was also evidence that the estate of plaintiff's father remained open awaiting the payment of this purchase price. Whether defendant was aware of the issuance of the Sheriff's deed and the condition of the estate was disputed.

▮ In view of the legal requirement that the vendee shall unequivocally renounce the contract relationship and his rights thereunder prior to assertion of a right antagonistic to that of his vendor, and in view of the outstanding unresolved question of fact, we conclude that it is impossible to now hold that defendant's claim based on the tax title, and on his alleged adverse possession, was established. We note also that defendant has not requested, by way of counterclaim, relief in the nature of quiet title based upon his tax deed.

IV. *The question whether the court was correct in finding that the equities favored defendant.*

▮ The court found that plaintiff had unreasonably delayed exerting his claim until defendant had changed his position and that the legal consequence of such delay was disqualification to maintain a forcible entry and detainer action. This determination was correct. The court did not, however, invoke the principle announced in *Fairview Mining Corp. v. American Mines and Smelting Co.,* supra, and *Rocky Mountain Gold Mines, Inc. v. Gold, Silver and Tungsten, Inc.,* supra, that where an equitable defense is interposed the action acquires an equitable character as to the plaintiff who then becomes entitled to such equitable relief as the facts indicate. Application of the doctrine of these cases would require the court to determine whether any residual unlitigated security rights in the plaintiff remain to be foreclosed. The court merely concluded that the forcible entry and detainer claim was barred and thus stopped short of determination of the further legal issues which would

finally dispose of the case. If the court had finally concluded that defendant had unequivocally asserted his antagonistic title and had renounced the contract, it would have disposed of the case and obviated the necessity for determining plaintiff's possible foreclosure rights.

To the extent the issues were determined, the trial court's adjudications are affirmed. Nevertheless, the matter must be remanded to the trial court with directions to conduct further proceedings to find the facts in the light of specific briefing by counsel of applicable law on the issue of whether defendant is entitled to assert his tax title as against plaintiff in view of the 1940 vendor-purchaser contract. Should the court determine that this course is not open to defendant, it should then proceed to extend to plaintiff a hearing on the subject of his rights, if any, to foreclose the contract on the mortgage theory as considered in the cited cases.

Upon remand of the case, both plaintiff and defendant should be permitted to amend their pleadings as they may be advised.

The judgment is affirmed in part, reversed in part, and the cause remanded to the trial court for further proceedings consistent with the views above expressed.

MR. CHIEF JUSTICE SUTTON and MR. JUSTICE MOORE concurring.