**PALMER RANCH, LTD.,**
**Plaintiff–Appellant,**

v.

**Apisith Tom SUWANSAWASDI,**
**Defendant–Appellee.**

**No. 94CA1841.**

Colorado Court of Appeals,
Div. I.

Jan. 25, 1996.

Rehearing Denied Feb. 22, 1996.

Certiorari Denied Aug. 19, 1996.

McDaniel, Baty & Miller, L.W. McDaniel, Durango, for Plaintiff–Appellant.

Bruce M. Kirkpatrick, Durango, for Defendant–Appellee.

Opinion by Judge ROTHENBERG.

In this action to quiet title to certain real property, plaintiff, Palmer Ranch, Ltd. (Palmer Ranch), appeals from the judgment of the trial court entered in favor of defendant, Apisith Suwansawasdi. We reverse and remand with directions to enter judgment for Palmer Ranch.

The property in question is 160 acres of mountainous, rocky, sparsely vegetated, and forested land. It is bounded on the west and south by 560 acres of public land owned by the Bureau of Land Management (BLM), and on the north and east by property owned by Palmer Ranch.

Palmer Ranch is a limited partnership comprised of S.B. Palmer, his wife, and his son, Terry. In 1958, Palmer Ranch bought the property to the north of the disputed parcel consisting of 860 acres. At that time, a perimeter fence enclosed plaintiff's ranch, the BLM land, the disputed parcel, and a parcel to the east also claimed by Palmer Ranch (the Pickeral/Paroda tract). Palmer Ranch received a deed to the Pickeral/Paroda tract in 1993 for no consideration.

At all pertinent times, Palmer Ranch has had a grazing lease on all of the BLM land within the perimeter fence. No interior fences defined the boundaries of the various parcels of property, and the properties within the fence are indistinguishable from one another in terms of topography and terrain.

The facts are largely undisputed. Since 1958, the Palmers have maintained the perimeter fence and they have used the property within the perimeter fence exclusively, except for an occasional hunter using BLM land for hunting purposes. A member of the Palmer Ranch limited partnership has lived on a ranch within the perimeters of the fence and the Palmers have posted the perimeter fence with "No Trespassing" signs. From 1958 through 1974, the Palmers grazed sheep on the disputed parcel and, from 1958 through the present, they also have grazed cattle on it.

In 1994, defendant purchased the disputed parcel of land from First Interstate Bank as trustee of the Anne Ewing trust. Thereafter, Palmer Ranch filed this action seeking a declaration that it was the owner of the property by adverse possession. Following a bench trial, the court entered judgment in favor of defendant, finding that Palmer Ranch had failed to prove actual and exclusive control over the property as required to support its claim for adverse possession.

Palmer Ranch contends that it established ownership of the property by adverse possession and that the trial court erred in concluding otherwise. We agree.

One claiming title by adverse possession has the burden of proving the claim by a preponderance of the evidence. *Gerner v. Sullivan*, 768 P.2d 701 (Colo.1989). To acquire land by adverse possession, one must prove possession of the disputed parcel for the statutory period of 18 years and that this possession was hostile, adverse, actual, under a claim of right, exclusive, and uninterrupted. *Board of County Commissioners v. Ritchey*, 888 P.2d 298 (Colo.App.1994).

A showing of force or actual dispute is not necessary to constitute hostile entry or to lay a foundation for a claim of adverse possession. All that is required to establish hostility is that the person claiming adverse possession occupy the property adversely to the rights of the record holder. *Anderson v. Cold Spring Tungsten, Inc.*, 170 Colo. 7, 458 P.2d 756 (1969).

A presumption that the possession is adverse arises after the claimant has demonstrated actual and exclusive possession of the property for the statutory period. In order to merit this presumption, the claimant's use must be sufficiently open and obvious to apprise the true owner, in the exercise of reasonable diligence, of an intention to claim adversely. Further, a claimant's possession need not be absolutely exclusive in order to attain the degree of exclusivity required for adverse possession. Instead, a claimant need only act as the average landowner would to assert the exclusive nature of the possession. *Smith v. Hayden*, 772 P.2d 47 (Colo.1989).

When the boundaries of land claimed by adverse possession are not established by fences, an adverse claimant may not claim any property not actually occupied for the statutory period. The extent of actual occupancy is a question of fact for the trial court to determine. *Smith v. Hayden, supra.*

Adverse possession by actual occupancy means to exercise the ordinary use of which the land is capable and such as an owner would make use of it. Thus, the nature of the property is critical in determining what acts by the claimant are required for actual possession. *Smith v. Hayden, supra.*

The practice of grazing cattle on unfenced land is not of itself sufficient to show the type of possession required to perfect a claim of adverse possession. *See Thomson v. Clarks Inc.,* 162 Colo. 506, 427 P.2d 314 (1967). *See also Smith v. Town of Fowler,* 138 Colo. 359, 333 P.2d 1034 (1959) (the pasturage of cattle on unfenced land does not constitute possession hostile and adverse to the owner of such land). Importantly, however, the seasonal grazing of livestock and the erection of a fence have been held to constitute sufficient continuous possession of disputed land to establish adverse possession. *First National Bank v. Fitzpatrick,* 624 P.2d 927 (Colo.App.1981).

Here, S.B. Palmer testified that, at the time of the purchase, he believed he was buying all of the land within the perimeter fence line, except for the BLM land. As to the public land within the fence he claimed possession, but not record title, by virtue of a grazing lease with BLM. His uncontradicted testimony was that he had grazed sheep and cattle on the disputed parcel and that no one else had used the property or claimed the right to use it, except for an occasional hunter desiring to use BLM land during hunting season.

Similarly, Terry Palmer testified that he could not state where the disputed parcel was located because all the land was indistinguishable. However, Palmer Ranch treated all of it within the perimeter fences as within its possession and he believed it owned all of it, except for BLM land.

Terry Palmer admitted listing the property for sale in 1990 and attaching to the map of the property a listing agreement which excluded the disputed parcel. He stated that the disputed parcel was excluded because Palmer Ranch had possession but did not have clear title to it. However, this 1990 transaction occurred after the 18–year period required for adverse possession by Palmer Ranch had expired. *See Doty v. Chalk,* 632 P.2d 644 (Colo.App.1981) (title to property acquired by adverse possession matures into absolute fee interest after statutory prescriptive period has expired; disclaimer executed later had no legal effect).

Following the testimony, the trial court found, *inter alia,* that: (1) When the Palmers bought the property in 1956, the fence was in a state of disrepair; (2) Palmer Ranch repaired the perimeter fence in the 1960's and maintained it; (3) Palmer Ranch believed it owned all of the land within the fence, except for the BLM land; (4) the land within the fence included the disputed tract and the Pickeral/Paroda tract; (5) Palmer Ranch had used the land within the perimeter fence to graze sheep until 1974 and cattle until 1994, as well as horses and mules; (6) all land within the fence is indistinguishable and the Palmers did not know exactly where the disputed land was; and (7) in 1976 defendant's predecessor had the 160–acre tract appraised and consulted with the BLM about access to the property.

However, relying upon *Webber v. Wannemaker,* 39 Colo. 425, 89 P. 780 (1907), the trial court concluded that because the disputed, interior tract was indistinguishable from the other land, and because Palmer Ranch had not fenced in that interior 160–acre tract separately from the other acreage within the perimeter fence, plaintiff's possession was not actual and exclusive, and plaintiff had not proven actual control over the property.

We conclude that the court's reliance upon *Webber* was misplaced. There, plaintiff filed an action to quiet title, asserting that she and her grantor had been in possession under color of title and had paid taxes on the disputed property for more than seven years. However, the evidence showed that the 25

acres in controversy had been fenced in common with 55 acres of other land belonging to persons other than the plaintiff or her grantors, and that, at a later time, the fence was taken away. Plaintiff did not claim title to the other 55 acres.

Under these circumstances, the court held that plaintiff had failed to prove adverse possession because:

> This is not evidence of adverse possession. It is not actual and exclusive possession, but a *possession in conjunction with other landowners,* and it falls far short of that kind of adverse possession which deprives the true owner of his title.... [When the claimant does not reside upon the property], it would at least require the land to be fenced by itself, and the possession to be exclusive, and that the control over it was such as to give notice of open, notorious, and exclusive possession.

*Webber v. Wannemaker, supra,* 39 Colo. at 433–34, 89 P. at 783 (emphasis added).

■ In contrast, here, it is uncontradicted that Palmer Ranch claimed and exercised actual and exclusive possession for approximately thirty-five years to all land within the perimeter fence that it had maintained. Because one cannot claim adverse possession to public land, Palmer Ranch has not and cannot assert a fee simple interest in the BLM land.

Nevertheless, the undisputed testimony was that, by virtue of its grazing lease with BLM, Palmer Ranch has enjoyed exclusive possession of the BLM property within the perimeter fence since 1956, interrupted only by sporadic entries by hunters. In fact, the bank's trust officer responsible for managing the Ewing trust for over eighteen years testified that "no one, to my knowledge, either myself or anyone else employed by the bank, was ever on the property." There was no evidence that defendant's predecessor had consulted with Palmer Ranch or had otherwise exercised a possessory interest in the 160 acres, other than to obtain an appraisal of the tract in 1976. And, since no one has asserted that the act of appraising the tract is inconsistent with adverse possession, we do not address it.

If the land is considered topographically, by virtue of its deed and grazing lease, Palmer Ranch has had possession for over three decades to a large donut shaped tract of land within which are contained the 160 disputed acres and the Pickeral/Paroda tracts. The inside tracts are similar to the hole within a donut.

Contrary to the trial court's conclusion, it is unnecessary for Palmer Ranch to know the precise boundaries of the tract in order to show adverse possession. What is critical is that, for a period exceeding 18 years, Palmer Ranch has exercised actual and exclusive possession of the inside tracts along with all other land within the perimeter fence.

We do not read *Webber* as requiring Palmer Ranch to have erected internal fences separating the inside tracts of grazing land from the other grazing land in order exclusively to possess such land. In fact, under these circumstances, it would have been absurd for Palmer Ranch to have done so, since no other party had exercised a possessory interest to Palmer Ranch in these inside tracts. When S.B. Palmer was asked why he had not fenced the disputed property, he explained:

> Why would I put a fence inside when I owned the land, when I [have] one all the way around the outside of it?

In summary, the undisputed evidence is that Palmer Ranch and no other party claimed and exercised actual and exclusive use of the land within its perimeter fence for a period in excess of 18 years. *See First National Bank v. Fitzpatrick, supra.* And, although the disputed parcel was fenced in with land owned by the BLM, it was further undisputed that Palmer Ranch has exercised actual possession of that fenced in land by virtue of its leasehold interest, interrupted only sporadically by hunters. Also, contrary to defendant's contention, any evidence indicating the Palmer's recognition of a paramount title by the record holder occurred after the 18 year period required for adverse possession had expired and had no legal effect. *See Doty v. Chalk, supra.*

Finally, unlike the circumstance in *Webber v. Wannemaker, supra,* Palmer Ranch's pos-

session was not "in conjunction with other landowners." One member of the Palmer Ranch was residing on a ranch within the perimeter fence, and there was no evidence that anyone from the Ewing family or anyone representing the trust had ever visited the disputed property.

We therefore conclude that the undisputed testimony and the trial court's findings of fact, by which we are bound, coupled with what we view as a correct interpretation of *Webber v. Wannemaker, supra,* and other controlling precedent, necessarily lead to the legal conclusion that Palmer Ranch proved adverse possession over the disputed parcel. *See* § 38–41–101, C.R.S. (1982 Repl.Vol. 16A); *First National Bank v. Fitzpatrick, supra.*

The judgment is reversed, and the cause is remanded with directions to enter judgment in favor of Palmer Ranch.

METZGER and CRISWELL, JJ., concur.