**Dave SCHULER and Jenean Schuler, Plaintiffs–Appellees,**

v.

**Yvonne OLDERVIK, Bevis Oldervik, and Ray Oldervik, Defendants–Appellants.**

No. 04CA2664.

Colorado Court of Appeals, Div. I.

Aug. 24, 2006.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2005.

Mulliken Weiner Karsh Berg & Jolivet, P.C., Gregory M. O'Boyle, Colorado Springs, Colorado, for Plaintiffs–Appellees.

David H. Krall, Colorado Springs, Colorado, for Defendants–Appellants.

Opinion by Judge GRAHAM.

This appeal concerns the trial court's application of the doctrine of adverse possession within a forcible entry and detainer (FED) proceeding arising from a boundary dispute between two adjacent properties. Defendants, Yvonne Oldervik, Bevis Oldervik, and Ray Oldervik, appeal from the trial court's judgment in favor of plaintiffs, Dave Schuler and Jenean Schuler. We affirm.

The parties own adjacent lands in a rural area. Defendant Yvonne Oldervik acquired title to her land in 1973. Plaintiffs acquired title to their land in 1980.

The disputed property consists of a driveway which extends over the western edge of defendant Yvonne Oldervik's property to a house and outbuildings on plaintiffs' property. The parties each maintained a fence on their respective sides of the driveway.

Evidence was presented at the FED hearing that from 1980 until August 2004, plaintiffs regularly used the driveway to access their house, outbuildings, and property. In addition, plaintiffs' mailbox was located on the driveway. Plaintiffs were the only ones who maintained the driveway by plowing, grading, and mowing. During that time period, defendants used the driveway to visit plaintiffs, borrow water from plaintiffs' well, obtain hay from plaintiffs, and fix their fence located on the east side of the driveway.

In August 2004, defendants fenced off access to the driveway after they observed plaintiffs stripping and removing top soil and sand from the land adjacent to the driveway. In response, plaintiffs filed an FED action pursuant to § 13–40–101, et seq., C.R.S.2005, in county court and claimed that defendants were trespassing on, blocking access to, and unlawfully possessing the driveway that they owned outright or by adverse possession. After defendants filed a motion to dismiss for lack of jurisdiction, the case was transferred to district court by agreement of counsel.

Defendants then filed a motion to dismiss plaintiffs' FED claim and contended that (1) they were the legal owners of the driveway; (2) the issue of adverse possession must be tried under C.R.C.P. 105 and not under the FED statutes; and (3) any right plaintiffs had to the driveway was through an easement by prescription. After holding a hearing on October 15, 2004, the trial court denied defendants' motion and found that the FED statute was applicable.

The case proceeded to a bench trial under the FED statutes. At the conclusion of the trial, the court found that, although defendant Yvonne Oldervik held legal title to the driveway, plaintiffs were the owners of the driveway by adverse possession. The court further found that plaintiffs were entitled to an award of their attorney fees and costs pursuant to § 13–40–123, C.R.S.2005, because the case was brought and heard under the FED statutes.

## I. Adverse Possession Claim in an FED Action

Defendants first contend that the trial court erred when it permitted plaintiffs' adverse possession claim to be tried under Colorado's FED statutes, because they were not afforded the opportunity to engage in full disclosures and discovery prior to trial. Defendants claim that the adverse possession claim should have been brought under C.R.C.P. 105, which is designed to determine title to property, instead of under the FED statutes, which are designed to determine possession. We disagree.

Under article VI, § 17 of the Colorado Constitution, a county court's jurisdiction is limited so that it may not determine issues involving boundaries or title to real property. This principle is reiterated in § 13–6–104(2), C.R.S.2005, which provides that "[t]he county court shall have concurrent original jurisdiction with the district court ... in cases of forcible entry, forcible detainer, or unlawful detainer, except when such cases involve the boundary or title to real property."

■ Although a county court may not resolve the issue of title to land in an FED action, it is appropriate for a district court to do so. *See Aasgaard v. Spar Consol. Mining & Dev. Co.*, 185 Colo. 157, 522 P.2d 726 (1974) (in an unlawful detainer action, the district court determined that the plaintiff had not established adverse possession, but the court incorrectly relied upon a county court judgment for possession of land in making its determination); *White v. Widger*, 144 Colo. 566, 575–76, 358 P.2d 592, 597–98 (1960) ("the statute pertaining to transfer of such actions to district court ... recognizes that the question of title is often an ingredient of a forcible entry and detainer suit"; "evidence as to plaintiff's title is [admissible] and is properly considered in a forcible entry and detainer action"); *see also Sloniger v. Rains*, 120 Colo. 339, 343, 208 P.2d 941, 943 (1949) (unlawful detainer actions involving questions of title to real property must be certified to the district court because justices of the peace do not have jurisdiction to determine questions of title to property; such cases proceed in the district court "in all respects" as if originally begun there); *Wise v. Schimmel*, 76 Colo. 184, 230 P. 786 (1924) (the justice of the peace has no jurisdiction to resolve question of title to property; in those FED cases, it is necessary for the justice of the peace to certify the case to the district court); *Hamill v. Bank of Clear Creek County*, 22 Colo. 384, 45 P. 411 (1896) (the issue of title to property cannot be tried in ordinary actions of forcible entry or unlawful detainer in county court).

■ Thus, an FED proceeding is not rendered inappropriate simply because the issue of ownership arises. *See Beeghly v. Mack*, 20 P.3d 610, 615 (Colo.2001) (if the issue of ownership automatically terminated an FED action every time it was raised within the action, it "would render the FED statutory scheme meaningless, as parties would merely need to raise an issue of ownership to avoid the expedited proceedings, regardless of the merits of such a claim"). Rather, when a party validly raises the issue of ownership in an FED action that directly affects his right to possession, the district court must determine ownership prior to ruling on possession. *Beeghly v. Mack, supra.*

Here, the court determined that the issue of title may be decided in an FED action when that action is heard in district court.

The court noted that this case began in county court and was transferred to district court upon an unopposed motion after agreement by counsel.

■ We conclude that the court properly determined that it could make a determination of title within an FED proceeding. *See White v. Widger, supra.*

■ Defendants' argument that they were not afforded due process because the court effectively denied their right to discovery and a trial is not persuasive. Defendants could have brought a counterclaim to quiet title under C.R.C.P. 105 after their motion to dismiss was denied, but they failed to do so. Additionally, defendants failed to avail themselves of the procedure under § 13–40–114, C.R.S.2005, to request a delay of trial in order to conduct any necessary discovery.

## II. FED Requirements

Defendants next contend that the requirements of the FED statutes were not satisfied because there was no evidence that they made any threats of force or violence against plaintiffs. Again, we disagree.

We must accept the trial court's findings of fact unless they are so clearly erroneous as to have no support in the record. *See* C.R.C.P. 52 ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."); *M.D.C./Wood, Inc. v. Mortimer,* 866 P.2d 1380 (Colo.1994); *Warren v. Farmers Alliance Mut. Ins. Co.,* 31 Colo. App. 292, 501 P.2d 135 (1972). The trial court has "an unparalleled opportunity to determine the credibility of the witnesses and the weight to be afforded the evidence which is before the court." *M.D.C./Wood, Inc. v. Mortimer, supra,* 866 P.2d at 1384; *see also Warren v. Farmers Alliance Mut. Ins. Co., supra.*

Under § 13–40–101, forcible entry and detainer occurs in the following circumstances:

(1) If any person enters upon or into any lands ... with force or strong hand ... whether any person is actually upon or in the same at the time of such entry, or if any person by threats of violence or injury to the party in possession or by such words or actions as have a natural tendency to excite fear or apprehension of danger gains possession of any lands ... and detains and holds the same, such person so offending is guilty of a forcible entry and detainer within the meaning of this article.

. . . .

(3) If any person enters upon or into any lands ... by force or by threats of violence, or words or actions which have a natural tendency to excite fear or apprehension of danger, and intimidates the party entitled to possession from returning upon or possessing the same, such person so offending is guilty of a forcible entry within the meaning of this article.

■ To prove forcible entry and detainer, a plaintiff must "show that force, *or appearances tending to inspire a just apprehension of violence,* were used in obtaining the possession." *Goad v. Heckler,* 19 Colo.App. 479, 481, 76 P. 542, 542 (1904) (emphasis added). An entry is not made with force simply because it is against the will of the occupant. *See Goad v. Heckler, supra; Goshen v. People,* 22 Colo. 270, 44 P. 503 (1896) (the statute contemplates more than the force implied in an ordinary trespass).

Generally there must be such acts of violence used or threatened as give those in possession reason to apprehend personal danger, or tend directly to cause a breach of the peace.... When a person entering on the land of another by his behavior or speech gives those who are in possession just reason to think that he intends to take possession by force if they do not give way to him, his entry is to be deemed forcible, whether he cause the apprehension of the use of violence by taking with him such unusual number of attendants, or by arming himself in such a manner, as plainly to indicate a design to back his pretensions by force, or by actually threatening to kill, maim, or beat those who continue in possession, or by making use of expressions plainly implying a purpose of using force against those who make resistance.

*Goad v. Heckler, supra,* 19 Colo.App. at 482, 76 P. at 542–43 (quoting 13 *Am. & Eng. Ency. of Law* 762 (2d ed.)).

■ Here, the court concluded that there was both a forcible entry onto and a forcible detainer of plaintiffs' property. In reaching its conclusion, the court found that defendants' action of building a fence to block plaintiffs' access to the driveway without first talking to plaintiffs "in itself has a certain amount of forceableness to it, and hostility to it." The court determined that testimony regarding incidents involving defendants' use of guns, including shooting at one of their neighbors, showed that they were "quick to use guns, in various ways, and are fairly assertive about protecting what they consider their property." The court found that these past incidents, which plaintiffs were aware of, explained why they did not tear down the fence put up by defendants and put it back where it was. The court found that, under the circumstances, defendants' posting of "no trespassing," "private property," and "keep out" signs "was more than what the average property owner might do in general terms." The court concluded that "the generalized apprehension of the neighbors about past actions of [defendants]," along with defendants' actions toward plaintiffs, had "a natural tendency to excite fear and apprehension of danger."

The record supports the trial court's findings. We therefore conclude that the trial court did not err when it determined that defendants' actions had a natural tendency to excite fear or apprehension of danger such that they forcibly entered and detained plaintiffs' property. *See M.D.C./Wood, Inc. v. Mortimer, supra.*

### III. Adverse Possession

Defendants next argue that the trial court erred when it concluded that plaintiffs owned the driveway by adverse possession. They contend that plaintiffs' possession of the driveway was not hostile, adverse, actual, or exclusive, but it was used only with their permission. We are not persuaded.

■ As set forth above, we accept the trial court's findings of fact unless they are so clearly erroneous as to have no support in the record, because the trial court is in the best position to determine the credibility of witnesses and the weight to be afforded the evidence before the court. *See* C.R.C.P. 52; *M.D.C./Wood, Inc. v. Mortimer, supra; Smith v. Hayden,* 772 P.2d 47 (Colo.1989); *Warren v. Farmers Alliance Mut. Ins. Co., supra.*

■ We will not disturb a trial court's judgment awarding ownership by adverse possession when the court's factual findings and conclusions of law are sufficient and supported by the record. *See Bd. of County Comm'rs v. Ritchey,* 888 P.2d 298 (Colo.App. 1994).

■ To acquire land by adverse possession, the claimant must prove that he possessed the disputed parcel for the statutory period of eighteen years and that the possession was hostile, adverse, actual, under a claim of right, exclusive, and uninterrupted. *See* § 38–41–101(1), C.R.S.2005 ("Eighteen years adverse possession of any land shall be conclusive evidence of absolute ownership."); *Bd. of County Comm'rs v. Ritchey, supra; see also Smith v. Hayden, supra; Palmer Ranch, Ltd. v. Suwansawasdi,* 920 P.2d 870 (Colo.App.1996). The claimant must prove adverse possession by a preponderance of the evidence. *See Gerner v. Sullivan,* 768 P.2d 701 (Colo.1989); *see also Smith v. Hayden, supra; Palmer Ranch, Ltd. v. Suwansawasdi, supra.* "Every reasonable presumption is made in favor of the true owner as against adverse possession." *Lovejoy v. Sch. Dist. No. 46,* 129 Colo. 306, 311–12, 269 P.2d 1067, 1070 (1954).

■ A determination of whether possession is hostile, actual, exclusive, and adverse is a question of fact to be determined by the trier of fact. *See Smith v. Hayden, supra.*

■ "[H]ostile intent is based on the intention of the adverse possessor to claim exclusive ownership of the property occupied." *Smith v. Hayden, supra,* 772 P.2d at 56; *see also Anderson v. Cold Spring Tungsten, Inc.,* 170 Colo. 7, 458 P.2d 756 (1969) (a specific intent directed toward the property owner is not required); *Bd. of County Comm'rs v. Ritchey, supra.* The adverse

possessor need not make a showing of force or actual dispute for his possession of the property to be hostile. *See Smith v. Hayden, supra* (the adverse possessor need not deliberately attempt to steal the property or create an actual dispute); *Palmer Ranch, Ltd. v. Suwansawasdi, supra* (the adverse possessor must only occupy the property adversely to the rights of the record holder to establish hostility). The possession must be hostile against both the true owner and the world from its inception. *See Lovejoy v. Sch. Dist. No. 46, supra.* The trier of fact determines whether possession is hostile through reasonable deductions from the acts and declarations of the parties. *Smith v. Hayden, supra; see also Anderson v. Cold Spring Tungsten, Inc., supra; Miller v. Bell,* 764 P.2d 389 (Colo.App.1988).

 Next, to actually and exclusively possess the land, the adverse possessor need only act as the average landowner would in utilizing the land for the ordinary use of which it is capable. *See Smith v. Hayden, supra,* 772 P.2d at 55 ("What acts will characterize possession as 'actual' depend on the nature and location of the property, the uses to which it can be applied and all the facts and circumstances of a particular case." (quoting *City of South Greenfield v. Cagle,* 591 S.W.2d 156, 160 (Mo.Ct.App.1979))); *see also Anderson v. Cold Spring Tungsten, Inc., supra; Palmer Ranch, Ltd. v. Suwansawasdi, supra,* 920 P.2d at 873 ("the nature of the property is critical in determining what acts by the claimant are required for actual possession"). The adverse possessor may use any actual visible means that puts the true owner and the public on notice of his dominion over the parcel. *See Anderson v. Cold Spring Tungsten, Inc., supra.* Actual occupancy does not require "constant, visible occupancy or physical improvements on every square foot of the parcel claimed." *Smith v. Hayden, supra,* 772 P.2d at 52; *see also Palmer Ranch, Ltd. v. Suwansawasdi, supra.*

In *Smith,* the claimants' use was exclusive where they "used the garage located on this parcel, they parked vehicles between the garage and the highway, their children played on the disputed area, their predecessors had stored fuel oil in an underground tank still in place behind the garage, and [they] held barbecues during which they and their guests used portions of the parcel." *Smith v. Hayden, supra,* 772 P.2d at 53. The record owners' occasional crossing of the parcel to obtain access to their garage, along with their children playing on the disputed area, was insufficient to destroy the exclusive possession of the claimants and amounted only to a limited entry. *Smith v. Hayden, supra.*

 Finally, once a claimant demonstrates that he has been in actual and exclusive possession of the property for the statutory period, a presumption arises that his possession was adverse; however, the use must be sufficiently open and obvious to apprise a true owner who exercises reasonable diligence that he intends to claim adversely. *See Smith v. Hayden, supra; see also Palmer Ranch, Ltd. v. Suwansawasdi, supra; Bd. of County Comm'rs v. Ritchey, supra* (there was a presumption that the use of the road was adverse where it was used openly, notoriously, and continuously for the prescriptive period).

 Accordingly, the claimant must effectively exclude the true owner, and the possession must not be joint. *See Smith v. Hayden, supra* (joint possession by the claimant and record owner precludes the fulfillment of the exclusivity requirement); *see also Vider v. Zavislan,* 146 Colo. 519, 362 P.2d 163 (1961) (where there is joint possession by the claimant and the record owner, there can be no adverse possession). But "a mere casual entry for a limited purpose by the record owner is not necessarily sufficient to prove that the use of the property was joint." *Smith v. Hayden, supra,* 772 P.2d at 52; *see also Raftopoulos v. Monger,* 656 P.2d 1308, 1312 (Colo.1983) (record owner's entry was not casual or for a limited purpose where the entry was "part of their usual customary ranch operation"), *overruled on other grounds by Gerner v. Sullivan, supra.*

Here, the court concluded that plaintiffs proved their adverse possession of the driveway by a preponderance of the evidence. The trial court found that the driveway was intended to be used for the farm on plaintiffs'

property and had been in existence for fifty or sixty years. The court further found that plaintiffs and others understood that it was plaintiffs' driveway and the driveway of their predecessors in interest.

The court also found that the fence along the east side of the driveway had been in existence for forty or fifty years, prior to the time defendant Yvonne Oldervik acquired the property. The court found that defendants fixed the fence, but kept it in basically the same place as it had been before. The court determined that the fence marked a boundary between the two respective parcels of property.

The court also determined that plaintiffs were the only ones who maintained the driveway by plowing, grading, and mowing. The court found that defendants used the driveway only to visit plaintiffs, borrow water from plaintiffs' well, get feed from plaintiffs, and maintain their fence along the east side of the driveway, but that such use was a use permitted by plaintiffs.

The court concluded that plaintiffs met the exclusivity requirement by showing that they acted as an average landowner would, because they used the driveway to access their property and maintained it. The court also found that plaintiffs met the hostility requirement by occupying the property adversely to the right of the recordholder for the required period of time.

■ The evidence adduced below indicated that plaintiffs' possession from 1980 until August 2004 was (1) hostile because they used the driveway as their own; (2) exclusive and actual because they acted as an average landowner would in utilizing the driveway for its ordinary use by using it to access their house, outbuildings, and property, using it as the location for their mailbox, maintaining and widening it, and installing a water line across it; and (3) adverse because their use of the driveway as their own was sufficiently open and obvious to apprise defendant Yvonne Oldervik that they intended to claim it adversely. Defendant Yvonne Oldervik testified that she was aware that plaintiffs used the driveway regularly to access their

property, maintained the driveway, and widened the driveway with their grader.

We therefore conclude that the trial court did not err when it determined that plaintiffs proved that they adversely possessed the driveway by a preponderance of the evidence. *See Bd. of County Comm'rs v. Ritchey, supra.*

## IV. Attorney Fees

Finally, defendants contend that the trial court erred when it awarded plaintiffs all their attorney fees. Defendants argue that even if plaintiffs' adverse possession claim was properly heard by the court under the FED statute, the court should only have awarded plaintiffs those attorney fees that were directly related to the issue of possession. We disagree.

■ The prevailing party in an FED action may recover his attorney fees as damages pursuant to § 13–40–123. *See Integra Fin., Inc. v. Grynberg Petroleum Co.,* 74 P.3d 347 (Colo.App.2002). "[C]laims that do not bear on the right to possession are not part of an FED action for purposes of awarding attorney fees." *Integra Fin., Inc. v. Grynberg Petroleum Co., supra,* 74 P.3d at 349.

Here, the court found that all plaintiffs' claims constituted one action, which was an FED action, and determined that plaintiffs were entitled to an award of all their attorney fees.

We conclude that the trial court properly awarded plaintiffs all their attorney fees because it was necessary for the court to determine ownership of the property prior to making a determination with regard to possession. *See Beeghly v. Mack, supra.*

The judgment is affirmed.

Judge MÁRQUEZ and Judge TERRY concur.