24CA0398 Gamblers Ridge v Alejandre-Avina 12-05-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0398
Delta County District Court No. 23CV30006
Honorable Mary E. Deganhart, Judge

Gamblers Ridge Investments, LLC,

Plaintiff-Appellant,

v.

Cruz J. Alejandre-Avina and Fabiola Ma Gomez De Alejandre,

Defendants-Appellees.

_____

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE DUNN
Gomez and Hawthorne*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 5, 2024

_____

Hoskin Farina & Kampf, PC, Andrew H. Teske, Brent A. Starnes, Grand
Junction, Colorado, for Plaintiff-Appellant

Rider & Quesenberry, LLC, Lloyd Quesenberry, Grand Junction, Colorado, for
Defendants-Appellees


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Plaintiff, Gamblers Ridge Investments, LLC (Gamblers Ridge), owns property surrounding the property of defendants, Cruz J. Alejandre-Avina and Fabiola Ma Gomez De Alejandre (Alejandres) on three sides.  Because Gamblers Ridge is the record owner of some of the property occupied by the Alejandres, Gamblers Ridge filed this action against the Alejandres asserting claims for trespass and injunctive relief.  The Alejandres counterclaimed for adverse possession of the disputed property.  The trial court found in favor of the Alejandres on their adverse possession claim and dismissed the remaining claims.  Gamblers Ridge appeals that judgment.  We affirm.

## I.     Background

¶ 2     In 2011, the Alejandres purchased property in Cedaredge, Colorado, that included a house.  At that time, there was a driveway leading to the house and fencing on the property's north, east, and west sides.  According to evidence presented at trial, the driveway had been in place since at least 1996, as had the fencing on the property's north, east, and west sides.  Less clear is whether a fence existed on the property's south side when the Alejandres purchased the property.  But two witnesses testified that a wire fence crossed

the driveway (located on the property's south side) in 1996. After their purchase, the Alejandres replaced or added some fencing in roughly the same location as the existing fencing, and perhaps added some fencing on the south side, enclosing the area highlighted below.



At trial, Mr. Alejandre testified that he understood and believed that the highlighted area was included in the property he purchased.[1]

¶ 3     In 2022, Gamblers Ridge purchased the property that surrounds the Alejandres' property on three sides. At the time of its purchase, the Alejandres' house and driveway were visible, as was

---

[1] This excerpt is from an admitted trial exhibit. The highlighted portion is added simply for ease of reference.

the fencing on all sides of the property (as shown above). After its purchase, Gamblers Ridge had the property surveyed. The survey showed that Gamblers Ridge is the record owner of some of the land occupied by the Alejandres — including the land on which the driveway to their house sits. The survey excerpted below shows the legal boundary lines of the Alejandres' property — marked "exception" — with the disputed property highlighted.



¶ 4      Armed with the survey, Gamblers Ridge brought a claim for trespass against the Alejandres and requested injunctive relief. The Alejandres counterclaimed to quiet title to the disputed property, asserting legal ownership through adverse possession.

¶ 5      After a bench trial, the court issued a written order finding in favor of the Alejandres on their adverse possession claim. In doing so, the court relied on Mr. Alejandre's testimony that the property

3

was "closed" when he bought it; a photograph from 1975 showing boundary lines that corresponded to the current fence line; and the "credible and compelling" testimony of a retired UPS driver and a former chief of police who both confirmed the existence of fencing on the property's east, west, and north sides along with a wire fence across the driveway leading to the house dating back to at least 1996. As additional support for its adverse possession finding, the court inferred that previous owners had acquiesced in the boundaries because it found that "the same boundaries" have "been in place since at least 1975." The court therefore dismissed the claims for trespass and injunctive relief.

## II.    Analysis

¶ 6    Gamblers Ridge maintains that the Alejandres failed to prove their adverse possession claim and that the court erred by "considering the doctrine of boundary line acquiescence." Because we conclude the record supports the adverse possession judgment, we needn't consider whether the court separately quieted title under the boundary line acquiescence doctrine.

## A. Legal Principles and Standard of Review

¶ 7 To bring a successful adverse possession claim, a party must demonstrate by clear and convincing evidence that possession of the disputed area was actual, adverse, hostile, under a claim of right, exclusive, and uninterrupted for eighteen years. *See Smith v. Hayden*, 772 P.2d 47, 52 (Colo. 1989); § 38-41-101(1), C.R.S. 2024. Adverse claimants need not actually possess the disputed property for eighteen years but may rely on their predecessors' use by "tacking" successive adverse possessions. *Doty v. Chalk*, 632 P.2d 644, 646 (Colo. App. 1981). "Every reasonable presumption is made in favor of the true owner as against adverse possession." *Schuler v. Oldervik*, 143 P.3d 1197, 1202 (Colo. App. 2006) (quoting *Lovejoy v. Sch. Dist. No. 46*, 269 P.2d 1067, 1070 (Colo. 1954)).

¶ 8 An appeal from a judgment following a bench trial presents a mixed question of fact and law. *State Farm Mut. Auto. Ins. Co. v. Johnson*, 2017 CO 68, ¶ 12. We review the court's factual findings — including whether possession is hostile or adverse — for clear error, meaning we will disturb the trial court's findings only if they are not supported by the record. *See Smith*, 772 P.2d at 52-53; *see also Beaver Creek Ranch, L.P. v. Gordman Leverich Ltd. Liab. Ltd.*

5

*P'ship*, 226 P.3d 1155, 1161 (Colo. App. 2009). But we review the court's legal conclusions de novo. *State Farm*, ¶ 12.

## B.    Adverse Possession

¶ 9    Gamblers Ridge says that the Alejandres failed to prove "each element of adverse possession." We are unpersuaded.

### 1.    Statutory Period

¶ 10    As we understand it, Gamblers Ridge first argues that the court failed to find when the statutory period began to run and, without that express finding, the court couldn't "tack" the Alejandres' use to that of the previous owner.

¶ 11    We don't read the court's order the same way. Based on our reading, the court found the statutory period began running no later than 1996. Indeed, the court found — with record support — that the fencing on the east, west, and north sides of the Alejandres' property, along with the driveway and a fence crossing the driveway, were in existence as early as 1996. And Mr. Alejandre testified that he purchased the property in 2011 directly from the previous owner and believed the fencing established the boundaries. Privity of possession is all that's required to permit the

Alejandres "to tack their possession to that of their predecessor."[2] *Trueblood v. Pierce*, 179 P.2d 671, 677 (Colo. 1947); *see also Maralex Res., Inc. v. Chamberlain*, 2014 COA 5, ¶ 20 n.2.

¶ 12     But even assuming the court could have been more explicit in finding that the statutory period began in 1996 or perhaps 1975 (another date referenced by the court), because either date satisfied the statutory period and Gamblers Ridge never presented evidence that the possession was interrupted, the exact date that the adverse possession began is not critical.  More specifically, any error in not plainly identifying 1996 or 1975 as the start of the adverse entry is harmless.  *See* C.R.C.P. 61.

## 2.     Uninterrupted Use

¶ 13     Gamblers Ridge briefly asserts that "[s]erious doubt exists with respect to the uninterrupted and continuous elements."  But Gamblers Ridge doesn't point to any break or interruption between the Alejandres' possession and the previous owner.  And the evidence showed that the Alejandres purchased the property

---

[2] At trial, Gamblers Ridge acknowledged that the owner previous to the Alejandres possessed the property as far back as the 1960s.

7

directly from the previous owner with the driveway and at least the north, west, and east fencing in place, all on the disputed property.

¶ 14    While there was some conflicting testimony about the existence of the southern fence in 2011, it's undisputed the driveway was present on the disputed property in 1996, as was a fence crossing the driveway. And Gamblers Ridge doesn't explain why the existence of a southern fence in 2011 relates to the continuity of possession. Without explanation or developed argument, we are unable to consider that assertion further. *See Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App. 2007) (addressing only "adequately developed" arguments).

### 3.    Actual, Exclusive, and Adverse Use

¶ 15    Gamblers Ridge broadly asserts that the evidence was insufficient to show actual, exclusive, and adverse use by the Alejandres and their predecessor.

¶ 16    "[T]o actually and exclusively possess the land, the adverse possessor need only act as the average landowner would in utilizing the land for the ordinary use of which it is capable." *Schuler*, 143 P.3d at 1203. To do that, the possessor may use visible means that puts the world on notice of the possessor's dominion over the

parcel. *See id.* Once a possessor demonstrates actual and exclusive possession of the property for the statutory period, a presumption arises that the possession was adverse. *Id.*; *see also Smith*, 772 P.2d at 52.

¶ 17 The Alejandres presented evidence to support a finding of actual and exclusive possession for the statutory period, raising a presumption of adverse possession. Specifically, the evidence established that a house was present in 1996 accessible by an open and visible driveway located on the disputed property. A reasonable inference from that evidence is the driveway was actually and actively used to access the house and property. And a retired UPS driver and a retired chief of police — who have no ownership interest in the property — testified that fencing was in place in 1996 on the property's east, west, and north sides and that a gate crossed the driveway on the south side. From this evidence, it's reasonable to infer that the Alejandres' immediate predecessor openly claimed all the property within the fence as their own and for their exclusive use. *See Smith*, 772 P.2d at 52 ("Any actual visible means, which gives notice of exclusion from the property to the true owner or to the public and of the defendant's dominion

over it, is sufficient" to show actual occupancy.) (quoting *Anderson v. Cold Spring Tungsten, Inc.*, 458 P.2d 756, 759 (Colo. 1969)). And Mr. Alejandre confirmed that when he purchased the property, the driveway was present and he believed that the fencing marked the boundaries of his property.

¶ 18    Gamblers Ridge presented no contrary evidence. Indeed, no evidence suggests Gamblers Ridge's predecessor ever claimed ownership of the disputed property, used the disputed property, or believed the fence didn't establish the boundaries of the Alejandres' property. *See Bd. of Cnty. Comm'rs v. Ritchey*, 888 P.2d 298, 304 (Colo. App. 1994) ("The act of creating a fence can permanently establish boundaries even if there is a mutual mistake as to the location of the fence."); *accord Lively v. Wick*, 221 P.2d 374, 376-77 (Colo. 1950) (finding that title had vested in the party claiming adverse possession because the parties, as well as their predecessors in interest, "seem[ed] to have recognized the line of the fence as the boundary between the two properties for as long as any of the witnesses could remember").

¶ 19    We are unpersuaded by Gamblers Ridge's contention that the court impermissibly drew evidentiary inferences in favor of the

10

Alejandres.  Gamblers Ridge seems to say that because "reasonable" presumptions must be made in favor of the record owner and against adverse possession, such presumptions are irrefutable.  But that's not the case.  Presumptions may be rebutted by contrary evidence and reasonable inferences drawn from that evidence.  *See Haney v. Olson*, 470 P.2d 933, 936 (Colo. App. 1970) (not published pursuant to C.A.R. 35(f)) (noting the presumption in favor of the record owner exists "until the party claiming adverse possession has submitted sufficient evidence" to support its claim, then "a presumption arises as to adverse possession which must be rebutted by the record owner").  And it's for the trial court to resolve factual issues, determine witness credibility, weigh evidence, and draw reasonable inferences from that evidence.  *See In re Estate of Owens*, 2017 COA 53, ¶ 22.  To the extent that Gamblers Ridge asks us to draw different evidentiary inferences, we may not do that.  *See id.*

¶ 20      Thus, the record supports the court's findings that the Alejandres occupied and possessed the disputed property as an ordinary landowner would.

11

## 4.     Hostile Use

¶ 21     Gamblers Ridge mostly argues that the Alejandres didn't present sufficient evidence of hostile use for the statutory period.

¶ 22     To establish hostile use, the adverse possessor must demonstrate an intent to claim exclusive ownership of the occupied property. *Welsch v. Smith*, 113 P.3d 1284, 1287 (Colo. App. 2005). What's not required is a "specific intent to take property from its owner." *Id.* Neither is it required to "make a showing of force or actual dispute." *Beaver Creek Ranch*, 226 P.3d at 1161.

¶ 23     The undisputed evidence supports the court's finding that the possession was "open and hostile." As before, the evidence showed the existence of the visible driveway leading to the house and property. And the evidence established that fencing enclosed the property. The driveway was on the disputed property and was open and obvious, as was the fencing surrounding the property. Mr. Alejandre testified to his open use of the enclosed property. And it is reasonable to infer that the previous owner used the driveway to access the property, intended the fences to mark the property boundary, and exercised dominion and control over the disputed property. *See Anderson*, 458 P.2d at 758 (explaining all that is

required to establish hostility when a boundary is at issue is that a person intended to occupy the property with the belief that the property is their own); *accord Antholz v. Squirrell,* 528 P.2d 257, 259 (Colo. App. 1974) (not published pursuant to C.A.R. 35(f)).

¶ 24 To the extent Gamblers Ridge speculates that the previous owner's possession wasn't hostile, it presented no evidence to support that argument.[3] Nor was the trial court required to credit testimony about the possible use of the fences from a witness who admittedly had no personal knowledge about the disputed property before 2022.

¶ 25 Thus, the undisputed evidence supports the court's finding that the possession was open and hostile.

### 5. Good Faith

¶ 26 Gamblers Ridge disagrees that the Alejandres had a good faith and reasonable belief that they owned the disputed property. *See Lensky v. DiDomenico,* 2016 COA 89, ¶ 25 (discussing good faith requirement for adverse possession claims after 2008). It says that

---

[3] Though Gamblers Ridge points to statements by its counsel in closing argument speculating that the disputed property may have been transferred among family members or the initial entry may have been permissive, no evidence supported that argument.

Mr. Alejandre — who is not a native English speaker and can't read in any language — must have known from the property's legal description that the purchase didn't include the disputed property.

¶ 27 But the trial court considered the evidence about the existing driveway and fences and credited Mr. Alejandre's testimony that he believed the fences established the property's boundary and included the driveway and enclosed areas. The court's factual findings have record support, and its credibility findings are binding. *See Owens*, ¶ 22.

### 6. The Court's Findings

¶ 28 Gamblers Ridge asks us to reverse the court's judgment because it claims the court's adverse possession findings are inadequate. But the court correctly identified the requisite elements, summarized the evidence presented, and found that the possession and use was "open and hostile" for the statutory period, the driveway and fencing dated back to 1996, the Alejandres used the disputed property as an ordinary landowner, and the Alejandres had carried their burden of proof on their adverse possession claim.

¶ 29 We are satisfied that the court adequately addressed the elements of adverse possession (particularly the elements disputed

14

at trial) and made sufficient findings to allow us to understand the basis of the order. *See In re Marriage of Rozzi*, 190 P.3d 815, 822 (Colo. App. 2008) ("A trial court's order must contain findings of fact and conclusions of law sufficiently explicit to give an appellate court a clear understanding of the basis of its order and to enable the appellate court to determine the grounds upon which it rendered its decision.").

¶ 30 Given all this, we affirm the trial court's judgment in favor of the Alejandres on their adverse possession claim. Having so concluded, we needn't consider Gamblers Ridge's alternative argument that the trial court erred by "*sua sponte*" considering "the doctrine of boundary line acquiescence," and, in its view, rendering judgment under that doctrine as well.

## III. Disposition

¶ 31 The judgment is affirmed.

JUDGE GOMEZ and JUDGE HAWTHORNE concur.