The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 12, 2022

**2022COA51**

**No. 20CA2091, *Overton v. Chess* — Taxation — Property Tax —**

**Redemption — Limitation of Actions for Recovery of Land —**

**Improvements — Expenditures — Interest**

A division of the court of appeals considers from when interest accrues for certain types of expenditures under section 39-12-101, C.R.S. 2021. The division concludes that interest accrues from the date each expenditure was made, except with respect to improvements.

COLORADO COURT OF APPEALS     **2022COA51**

Court of Appeals No. 20CA2091
Fremont County District Court No. 17CV30126
Honorable Lynette M. Wenner, Judge

Charles F. Overton and Janet Overton,

Plaintiffs-Appellants and Cross-Appellees,

v.

Clarence Chess and James Erickson,

Defendants-Appellees and Cross-Appellants.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE BERGER
Brown and Johnson, JJ., concur

Announced May 12, 2022

Law Office of Dan Slater, Daniel B. Slater, Cañon City, Colorado, for Plaintiffs-Appellants and Cross-Appellees

David C. Conley, PC, David C. Conley, Colorado Springs, Colorado, for Defendants-Appellees and Cross-Appellants

¶ 1    A treasurer's deed may be issued to a tax lien purchaser when the owner of real property does not pay real estate taxes and does not redeem the property from the tax sale.  When the original owner challenges the treasurer's deed as improperly issued, section 39-12-101, C.R.S. 2021, governs the rights of the parties.  If the issuance of the treasurer's deed was statutorily insufficient, the original owner must reimburse the treasurer's deed holder for certain expenditures plus interest.  But section 39-12-101 does not specify from when that interest accrues for certain types of expenditures.  This case requires us to decide that question.

¶ 2    Charles F. and Janet Overton (Overton) appeal the amount of interest that the district court awarded on certain expenditures in connection with an action to recover land under section 39-12-101.  Clarence Chess and James Erickson (Chess) cross-appeal the court's denial of a set-off for the value of an easement conveyed by Overton while Overton held title to the property.

¶ 3    The first question presented is whether interest accrues from the date each expenditure was made or only from the date that the court ascertains the reimbursement amount.  We conclude that interest accrues from the date each expenditure was made, except

with respect to improvements. As to the second question, we conclude that the district court erred by finding that there was no evidence regarding diminution in value to the property because of the conveyance of the easement. We therefore affirm in part, reverse in part, and remand with directions.

## I. Relevant Facts and Procedural History

¶ 4 The county treasurer conveyed a treasurer's deed for real property to Overton after Chess, the original owner of the property, failed to pay real estate taxes. Chess challenged the validity of the treasurer's deed because, he claimed, he had not been given the statutorily required notice before it was issued.

¶ 5 After a bench trial, the district court agreed and ordered the return of the property to Chess, subject to Chess reimbursing certain expenditures, as required by section 39-12-101. In determining that amount, the court rejected Chess's request to offset the value of a utility easement on part of the property that Overton had conveyed to a third party.

¶ 6 Both parties filed post-trial motions. Overton filed a "Motion for Imposition of Interest," requesting that the court assess interest "based on the date each expense was incurred." Chess filed a

2

C.R.C.P. 59(a) motion, asking the court to "reconsider its ruling to not award any credit" for the value of the utility easement.

¶ 7     The court did not expressly rule on either motion. Chess's Rule 59 motion was denied by operation of law when the court did not rule within the time prescribed by that rule. C.R.C.P. 59(j).

¶ 8     After the Rule 59(j) deadline, Chess filed a "Motion to Deposit Funds under Rule 67," which requested permission to deposit into the court registry the principal amount previously determined by the court, plus interest running from the date the court ascertained that amount, in exchange for possession of the property.

¶ 9     Over Overton's objection, the court granted Chess's C.R.C.P. 67 motion. Chess deposited the funds in accordance with the court's order.

## II.     Jurisdiction

¶ 10    Although not raised by either party, we first address our jurisdiction to consider this appeal because an "appellate court must always be satisfied that it has jurisdiction to hear an appeal." *Chavez v. Chavez*, 2020 COA 70, ¶ 22.

¶ 11    This court has jurisdiction over final judgments entered by a district court. *See* C.A.R. 1(a)(1); § 13-4-102(1), C.R.S. 2021. "[A]

final judgment is 'one that ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceedings.'" *Chavez,* ¶ 24 (citation omitted). Prejudgment interest is a component of damages and therefore must be addressed by the court before the judgment is final for appeal. *Id.* at ¶ 26.

¶ 12 The court's initial order stated that "[Chess] shall make payment to [the Overtons] to compensate them for the improvements and expenses they incurred in the amount of $155,517.98 together with interest thereon at the rate of twelve percent per annum, by the person recovering said land to the persons."

¶ 13 But the Rule 67 order authorized Chess to deposit the principal amount previously determined by the court together with interest that clearly was computed from the date of the court's initial order. The court's later grant of Chess's Rule 67 motion, therefore, necessarily held that the interest accrued only from the ascertainment date, not the date the expenditures were made.

¶ 14    Accordingly, the district court entered a final judgment and we have appellate jurisdiction.

### III.   Analysis

### A.   Interest

¶ 15    Overton contends that section 39-12-101 requires prejudgment interest and, more specifically, interest on reimbursement amounts accruing from the date of the expenditures.  We agree as to all categories of expenditures except improvements.

¶ 16    The parties agree, as do we, that Overton preserved this claim for appeal.  This claim presents a question of statutory interpretation, which we review de novo.  *See Nieto v. Clark's Mkt., Inc.*, 2021 CO 48, ¶ 12.  When interpreting a statute, our aim is to effectuate the legislature's intent, and we apply unambiguous statutes as written.  *Id.*

¶ 17    If, however, a statute is ambiguous, "meaning it is silent or susceptible [of] more than one reasonable interpretation," we turn to extrinsic aids to discern the statute's meaning.  *People v. Jones*, 2020 CO 45, ¶ 55.  Those aids include the end to be achieved by

5

the statute, the language and structure of the statute, and any relevant legislative history.  *Id.*; *Nieto*, ¶ 13.

¶ 18    "The right to interest, absent an agreement to pay it, is purely statutory and is limited to those circumstances set forth in the statute."  *Indian Mountain Metro. Recreation & Park Dist. v. J.P. Campbell & Assocs.*, 921 P.2d 65, 66 (Colo. App. 1996).  Similarly, the right to prejudgment interest is purely statutory.  *See id.*  Unless a statute authorizes prejudgment interest, a court has no authority to award it.  *Id.*

¶ 19    Section 39-12-101 provides in relevant part that

> [w]hen a recovery of any of such land is effected in any suit, action, or proceeding, the value of all improvements made in good faith on such lands, and all sums paid for the tax lien on said land and for improvements, and all costs incident to the issuance and recording of the treasurer's deed, and all taxes and assessments paid thereon after the sale of the tax lien thereof, including the redemption value of all tax sale certificates redeemed, held, or surrendered for redemption by the grantee in such treasurer's deed or his heirs or assigns, shall be ascertained by the court or jury trying the action for recovery *and shall be paid, together with interest thereon at the rate of twelve percent per annum,* by the person recovering said land to the persons entitled thereto, and the payment of such sum shall be a condition precedent to the entry of judgment

or decree in such suit, action, or proceeding. . . . The term "improvements" includes sums and amounts of money expended thereon in good faith by the grantee and his successors and assigns in search of minerals and oil, as well as other expenditures for the improvements of such lands which add to the cost and value thereof.

(Emphasis added.)

¶ 20     The plain language of section 39-12-101 authorizes at least some amount of prejudgment interest on all categories of expenditures listed in the statute because the reimbursement amount (including interest) must be paid *before* a court may enter a judgment or decree in the case.[1]

¶ 21     The plain language of section 39-12-101 is also clear that interest accrues from the date of ascertainment as to the improvements. The statute requires reimbursement of the *value* of the improvements. That value, as opposed to the *amount* paid for the improvements, is unliquidated and unknown until the trier of

---

[1] While several other statutes authorize prejudgment interest in certain circumstances, Overton has not argued those statutes apply here. *See, e.g.,* § 5-12-102(1)(a), C.R.S. 2021; § 13-21-101(1), C.R.S. 2021.

fact ascertains it.[2]  Therefore, because we aim to give effect to every word in a statute, interest on the improvements accrues only from the date the trier of fact ascertains the value of the improvements. *See Nieto,* ¶ 21.

¶ 22     But the statutory language does not specify an accrual date for the remaining categories of expenditures, which include the "sums" paid for the tax lien, the "costs" related to the treasurer's deed, and "all taxes and assessments paid" after issuance of the tax lien.  Unlike the "value" of improvements, those amounts are liquidated and known even before the trier of fact ascertains them.

¶ 23     As to those remaining categories, the statutory language does not answer the following question: Does interest accrue from the date each expenditure was paid by the grantee of the treasurer's deed or from the date the court or jury ascertains the reimbursement amount?

---

[2] We reject Overton's argument that the statute's use of the word "expenditures" in the definition of "improvements" means that interest accrues from the date each improvement was made.  The word "value" modifies the defined term "improvements."  For the same reason, we do not view the Colorado Supreme Court's use of the word "expenditures" in *White v. Widger,* 144 Colo. 566, 573, 358 P.2d 592, 596 (1960), as inconsistent with our reading of the statute.

¶ 24    Section 39-12-101 is subject to more than one reasonable interpretation. One could reasonably conclude that interest accrues from the date that the court or jury ascertains the reimbursement amounts owed on categories other than improvements. On the other hand, one might also reasonably conclude that the interest accrues from the date each expenditure (other than improvements) is made by the grantee of the treasurer's deed.

¶ 25    Because the statute is ambiguous, we turn to interpretive aids to answer the question. For two reasons, we conclude that the statute requires interest from the date each expenditure is made except as to the value of improvements.

¶ 26    First, the object to be obtained by the statute supports the reading that interest accrues from the date of these expenditures. The Colorado Supreme Court held that the purpose of a prior version of the statute was "protecting claimants under tax deeds." *Wood v. McCombe*, 37 Colo. 174, 182, 86 P. 319, 321 (1906), *aff'd sub nom. Elder v. Wood*, 208 U.S. 226 (1908). Similarly, in *Cripple Creek Trading & Mining Co. v. Stewart*, the court held that the statute's purpose

> was to permit no delinquent whose land has been sold to cancel, because for some reason void, the deed issued thereon, and thus escape the tax. It evidently contemplates that he shall pay *because the property and its tax burden were his* and that burden has been discharged by another; *and that he shall pay interest and penalties to discourage his failure to meet his obligation to the state,* and encourage others to meet it in event of such failure.

100 Colo. 271, 273, 67 P.2d 1032, 1033 (1937) (emphasis added). Assessing interest from the date each expenditure is made serves the purpose of protecting treasurer's deed holders like Overton.

¶ 27    Second, a closely related statute also supports this reading. A property owner who redeems property from a tax lien purchaser must pay interest on costs "from the date of sale." § 39-12-103(3), C.R.S. 2021. It would be anomalous to disallow that same interest to a lien purchaser in the next step of the statutory process.

¶ 28    For these reasons, we conclude section 39-12-101 requires interest on reimbursement amounts from the date of ascertainment as to the value of improvements and from the date each of the remaining expenditures were made. Other than the value of improvements, the court therefore erred by awarding interest only from the date it ascertained the amount of the expenditures.

## B. Easement

¶ 29    On cross-appeal, Chess claims that the district court erred when it denied an offset for the value of the utility easement conveyed by Overton.  We agree.

¶ 30    This issue was adequately preserved for appeal.  We review the district court's findings underlying its denial of relief for clear error and will not disturb such findings unless they find no support in the record.  *See Owners Ins. Co. v. Dakota Station II Condo. Ass'n,* 2021 COA 114, ¶ 50.

¶ 31    "An easement is a right conferred by grant, prescription or necessity authorizing one to do or maintain something on the land of another 'which, although a benefit to the land of the former, may be a burden on the land of the latter.'"  *Lazy Dog Ranch v. Telluray Ranch Corp.,* 965 P.2d 1229, 1234 (Colo. 1998) (citation omitted).

¶ 32    The court's initial order stated,

> No credit is awarded against the total amount for the funds received from the Black Hills Easement since [the Overtons] were the known legal owners of the property at the time they entered into the agreement.  No evidence was presented showing there was a negative impact on the value of the property as a result of this separate agreement between Black Hills and [the Overtons].

11

¶ 33    The record, however, contained the offer letter from the utility for the easement and the easement deed itself. The offer letter stated that the utility would "pay the fair market value for the land rights to be acquired and has retained the services of an independent appraiser, to provide salient comparable sales data that serves as the basis for determining the fair market value for the land rights to be acquired." The easement deed stated it granted the right to "enter upon the lands" and that it "shall run with the land."

¶ 34    The offer letter and related easement deed supplied at least *some* evidence of the value of the easement and, thus, some evidence of diminution in value of the entire parcel. The court's conclusion that there was *no evidence* regarding the property value was therefore clearly erroneous.

¶ 35    Janet Overton, an owner of the property at the time of trial, testified that there already was an electric line on the property and that she did not believe the easement reduced the property value. Because there was some evidence on both sides of this disputed question, the district court was required to resolve the disputed

12

facts.  We must remand for additional findings and conclusions because the court did not do so.

## IV.  Disposition

¶ 36    The court's judgment requiring Chess to pay interest on the value of the improvements from the date the court ascertained the reimbursement amount is affirmed.  The court's judgment requiring Chess to pay interest on all other categories of expenditures from the date the court ascertained the reimbursement amount is reversed.  That part of the judgment that denied an offset for the value of the conveyed easement is also reversed.

¶ 37    The case is remanded for two purposes.  First, the district court must ascertain the amount of interest accruing from the date expenditures other than improvements were made.  Second, the court must make findings and conclusions on the value, if any, of the easement and enter judgment accordingly.

JUDGE BROWN and JUDGE JOHNSON concur.